Butcher v. Wendt

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2019

(Argued: March 10, 2020      Decided: September 22, 2020)

Docket No. 19-224-cv

_____

GEORGE H. BUTCHER III,

*Plaintiff-Appellant*,

v.

BRADLEY W. WENDT, RICK FITZGERALD, MICHAEL D. CASSELL, JOSEPH FARNETI,

*Defendants-Appellees*.

_____

Before:

RAGGI, LOHIER, and MENASHI, *Circuit Judges*.

George Butcher III, pro se, appeals from a judgment of the United States District Court for the Southern District of New York (Schofield, J.) dismissing his complaint under the Rooker-Feldman doctrine and for failure to state a claim. We decline to address the applicability of the Rooker-Feldman doctrine to Butcher's claims and **AFFIRM** the dismissal of his claims on the merits.

Judge Menashi concurs in part and concurs in the judgment in a separate opinion.

GEORGE H. BUTCHER III, *pro se*, New Rochelle, NY.

DANIEL L. MILLMAN, Daniel L. Millman, P.C., Jericho, NY, *for Defendant-Appellee Bradley W. Wendt.*

Rick Fitzgerald, *pro se*, Orlando, FL.

MICHAEL D. CASSELL, *pro se*, Hogan & Cassell, LLP, Jericho, NY.

DAVID LAWRENCE III, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Anisha S. Dasgupta, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, New York, NY, *for Defendant-Appellee Joseph Farneti.*

LOHIER, *Circuit Judge*:

George Butcher III, pro se, appeals from a judgment of the United States District Court for the Southern District of New York (Schofield, J.) dismissing his complaint in part under the Rooker-Feldman[1] doctrine and in part under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c), (d), as well as 42 U.S.C. § 1983. Butcher alleged that the individual defendants—former employees of Butcher's company, a lawyer for one of the

---

[1] D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Tr. Co., 263 U.S. 413 (1923).

employees, and a New York Supreme Court justice—conspired against him in arbitration and judicial proceedings arising out of an employee compensation dispute.

We affirm the dismissal of all the claims under Rule 12(b)(6), without addressing the dismissal in part under the Rooker-Feldman doctrine.

BACKGROUND

At all times relevant to this litigation, Butcher was the Chairman and Chief Executive Officer of the BondFactor Company. In April 2010 BondFactor hired Bradley Wendt to be its president. After some negotiation, Wendt's employment contract provided for a base compensation of $1.2 million, which would accrue each year and vest when the company received a $10 million capital infusion. Until that time, Wendt was entitled to a minimum salary of $28,000. By May 2013 the initial capital infusion of $10 million had occurred, and Wendt's accrued base compensation was fully vested. In July 2013, however, Butcher and BondFactor amended employee contracts to delay payment of unpaid vested compensation until the company had raised $500 million. Although Wendt

objected to adding the new $500 million infusion target to his contract, he eventually signed the amended contract.

Rick Fitzgerald was hired as BondFactor's managing director in 2011 with a base compensation of $250,000, which accrued annually and was set to vest upon a capital infusion of $20 million. Fitzgerald elected to forgo a minimum salary in exchange for reimbursements for weekly travel between New York and Fitzgerald's home in Florida.

Wendt and Fitzgerald soon began to complain about their compensation, and both were fired in November 2013. They started an arbitration proceeding against BondFactor and Butcher, raising several claims relating to their employment and compensation. In a partial final award entered in February 2015, the arbitrator dismissed all of Wendt's claims and several of Fitzgerald's claims. As for Fitzgerald's claim under the Fair Labor Standards Act (FLSA) and his contractual claim that BondFactor improperly refused to reimburse his travel expenses, however, the arbitrator awarded Fitzgerald $156,459.76 plus attorneys' fees, for which Butcher and BondFactor were jointly and severally liable. In May

2015 the arbitrator issued a final award that determined the amount of Fitzgerald's attorneys' fees.

Having lost, Wendt challenged the arbitrator's decision in State Supreme Court under Article 75 of New York's Civil Practice Law and Rules.[2] Justice Joseph Farneti, a defendant in this litigation, presided over the action. Attorney Michael Cassell, another defendant in this litigation, represented Wendt in the Article 75 proceeding. Butcher and BondFactor principally moved to dismiss the petition as untimely, but Justice Farneti denied the motion, concluding that the time for filing the petition began to run upon entry of the final award in May 2015 rather than the partial award in February. Turning to the merits, Justice Farneti vacated the arbitration award. He explained that the 2013 amendment to Wendt's contract violated New York public policy because it increased the capital infusion target upon which Wendt's base compensation would vest after the original infusion target had already been reached. Butcher and BondFactor appealed Justice Farneti's decision. The New York State Appellate Division reversed Justice Farneti's judgment, concluding that Wendt's petition should

---

[2] Article 75 governs arbitration proceedings in New York State and contains a provision permitting a party to bring an action in state court to vacate or modify an arbitration award. See N.Y. C.P.L.R. § 7511.

have been dismissed as untimely. Wendt v. BondFactor Co., 94 N.Y.S.3d 134 (2d Dep't 2019).

In October 2016 Wendt and Fitzgerald, represented by Cassell, filed a lawsuit in the Southern District of New York claiming that Butcher had retaliated against them in violation of the federal Dodd-Frank Act. The district court dismissed the complaint as barred under the doctrine of res judicata because Wendt and Fitzgerald could have raised their retaliation claims in the earlier arbitration. See Wendt v. BondFactor Co., No. 16 Civ. 7751 (DLC), 2017 WL 3309733, at *7 (S.D.N.Y. Aug. 2, 2017).

In October 2017, while Butcher's appeal to the Appellate Division was still pending, Butcher filed this action in federal court alleging that Wendt, Fitzgerald, Cassell, and Justice Farneti conspired to defraud him and to deprive him of his due process rights in the Article 75 proceeding, in violation of RICO, 18 U.S.C. § 1962(c), (d), and 42 U.S.C. § 1983. In his second amended federal complaint, Butcher alleged that Wendt and Fitzgerald made a number of false statements that were designed to manufacture a future lawsuit against BondFactor, that Wendt and Fitzgerald conspired to testify falsely during the arbitration proceedings, and that attorney Cassell knowingly filed false

statements in the Article 75 proceeding and the Dodd-Frank lawsuit. Butcher also alleged that, as early as December 2014, well prior to entry of the final arbitration award, Wendt, Fitzgerald, Cassell, and Justice Farneti were already conspiring to vacate the award. Wendt and Cassell delayed filing the Article 75 proceeding, Butcher claimed, "to facilitate the selection of Farneti as the presiding officer." App'x at 308. Finally, Butcher asserted that Wendt and Cassell must have bribed Justice Farneti to rule in Wendt's favor.

The District Court held that the Rooker-Feldman doctrine deprived it of subject matter jurisdiction over Butcher's RICO claims related to Wendt's compensation and certain claims arising from the Article 75 proceeding. It dismissed Butcher's remaining claims on the merits for failure to state a claim. It was after the District Court dismissed Butcher's complaint that the New York Appellate Division reversed Justice Farneti's judgment. See supra at 6.

This appeal followed.

DISCUSSION

I

Butcher first argues that the District Court improperly relied on the Rooker-Feldman doctrine to dismiss his claims related to Wendt's compensation

7

for lack of jurisdiction while an appeal of Justice Farneti's judgment in the Article 75 proceeding was pending. We conclude that these claims, like the others in Butcher's complaint, were properly dismissed for failure to state a claim and, therefore, we affirm on a different basis from that relied on by the District Court. See Wells Fargo Advisors, LLC v. Sappington, 884 F.3d 392, 396 n.2 (2d Cir. 2018).

We review de novo the dismissal of Butcher's claims under Federal Rule of Civil Procedure 12(b)(6). See Fink v. Time Warner Cable, 714 F.3d 739, 740 (2d Cir. 2013). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted), and that "raise[s] a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

All of Butcher's claims against Justice Farneti are for money damages and arise out of acts or omissions taken in his judicial capacity related to the Article 75 proceeding over which he presided. "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009). Because Butcher's claims against

8

Justice Farneti are barred by absolute judicial immunity, they were correctly dismissed under Rule 12(b)(6).

The District Court also correctly dismissed Butcher's RICO and § 1983 claims against Wendt, Fitzgerald, and Cassell. To state a claim of a substantive RICO violation under § 1962(c), a plaintiff must allege, among other things, two or more predicate acts "constituting a pattern" of "racketeering activity." Williams v. Affinion Grp., LLC, 889 F.3d 116, 124 (2d Cir. 2018) (quotation marks omitted). Those predicate acts must be the "proximate cause" of the alleged injury. Empire Merchs., LLC v. Reliable Churchill LLLP, 902 F.3d 132, 140 (2d Cir. 2018) (quotation marks omitted). To state a claim for RICO conspiracy under § 1962(d), the plaintiff must also "allege the existence of an agreement to violate RICO's substantive provisions." Williams, 889 F.3d at 124 (quotation marks omitted). And "[t]o state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (quotation marks omitted).

Butcher's allegations in support of his conspiracy claims of a corrupt agreement between the private defendants and Justice Farneti are uniformly conclusory, speculative, and implausible.  See id., at 324; Betts v. Shearman, 751 F.3d 78, 84 n.1 (2d Cir. 2014).  Notably, his barebones claim of a conspiracy involving Justice Farneti—that Wendt knew that Justice Farneti would preside over the proceedings over a year before those proceedings commenced, and that Wendt, Fitzgerald, and Cassell began to conspire with Justice Farneti well before the final arbitral award—is unaccompanied by any factual allegation to support it.  We agree with the District Court that Butcher's allegations of a corrupt agreement, which rest on rank speculation, are inadequate to support his conspiracy claims under RICO and § 1983.

Butcher's substantive RICO claim fares no better.  We recently explained that "allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act."  Kim v. Kimm, 884 F.3d 98, 104 (2d Cir. 2018).  For that reason, we conclude that Butcher's allegations that the private defendants made false statements in their various filings and in the course of testifying in the arbitration and Article 75 proceedings cannot support a claim of a substantive RICO violation.  Butcher's allegations

10

that Wendt and Fitzgerald sent fraudulent emails during their employment with BondFactor do not constitute a pattern of racketeering activity for the separate reason that Butcher failed to allege that the emails proximately caused any of his injuries. See Empire Merchs., LLC, 902 F.3d at 140. Butcher did not allege that either the arbitrator or Justice Farneti relied on the emails as a basis for their rulings in favor of Fitzgerald and Wendt. They relied instead on a legal analysis under the FLSA and New York public policy, the undisputed fact that Fitzgerald did not receive any salary during his employment with BondFactor, and the initial vesting target under Wendt's contract, which Butcher admitted was met.

Accordingly, we affirm the District Court's judgment on the ground that Butcher's complaint failed to state any claim on which relief could be granted.

II

A side note. Our concurring colleague says that we should have fully grappled with the Rooker-Feldman doctrine before reaching the merits because it is a jurisdictional bar that we cannot avoid. Our refusal to address the doctrine as a threshold jurisdictional issue, he insists, contravenes Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998).

To the contrary, resolving this appeal on the merits is in step with both our precedent and Steel Co. In Steel Co., the Supreme Court instructed that we could not assume hypothetical jurisdiction over questions of Article III jurisdiction, as had been the practice. "For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." Id. at 101–02. But the Court's holding in Steel Co. was limited to standing under Article III (that is, constitutional standing), which it distinguished from "statutory standing." Id. at 97; see also, e.g., id. at 93 (disapproving of the resolution of "cause-of-action questions . . . where there is no genuine case or controversy" under Article III).

We have consistently kept faith with Steel Co.'s focus on Article III jurisdiction. "The bar on hypothetical jurisdiction," we have held, "applies only to questions of Article III jurisdiction." Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 511 n.5 (2d Cir. 2005). So "where the potential lack of jurisdiction is a constitutional question," we decide the question. Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d 488, 497 (2d Cir. 2002) (quotation marks omitted). By contrast, we may assume hypothetical jurisdiction where the jurisdictional issue is statutory in nature. See Doyle v. U.S.

Dep't of Homeland Sec., 959 F.3d 72, 79 (2d Cir. 2020); Vera v. Banco Bilbao Vizcaya Argentaria, S.A., 946 F.3d 120, 137 n.22 (2d Cir. 2019); Ahmed v. Holder, 624 F.3d 150, 154–55 (2d Cir. 2010); Abimbola v. Ashcroft, 378 F.3d 173, 180 (2d Cir. 2004); United States v. Miller, 263 F.3d 1, 4 n.2 (2d Cir. 2001).[3] If, as here, "the jurisdictional constraints are imposed by statute, not the Constitution," we have found it particularly prudent to assume hypothetical jurisdiction "where the jurisdictional issues are complex and the substance of the claim is . . . plainly without merit." Ivanishvili v. U.S. Dep't of Justice, 433 F.3d 332, 338 n.2 (2d Cir. 2006).[4]

The Rooker-Feldman doctrine does not raise a question of Article III jurisdiction, and no circuit court has ever seriously claimed that the doctrine has constitutional status under Article III. The doctrine instructs that district courts

---

[3] We routinely and appropriately assume hypothetical jurisdiction in summary orders. See, e.g., Jang v. Tr. of St. Johnsbury Academy, 771 F. App'x 86, 87 (2d Cir. 2019); Palaguachi v. Whitaker, 755 F. App'x 81, 84 (2d Cir. 2018). We have done so in cases in which the Rooker-Feldman doctrine is invoked. See, e.g., Yeshiva Imrei Chaim Viznitz of Boro Park, Inc. v. City of New York, 496 F. App'x 122, 124 (2d Cir. 2012); Saferstein v. Lawyers' Fund for Client Prot., 223 F. App'x 39, 40 (2d Cir. 2007).

[4] Our concurring colleague observes that subsequent decisions found the statutory limitations at issue in certain of the cited cases to be non-jurisdictional in nature. But that misses the point. These cases show that the Second Circuit has not hesitated to assume hypothetical statutory jurisdiction in rejecting plainly meritless claims. In doing so in these cases, the panels were not acting on any assumption that the statutory question would be found not to be jurisdictional in the future.

13

lack subject-matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Rooker-Feldman thus "bars a losing party in state court from seeking what in substance would be appellate review of the state court judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Id. at 287 (quotation marks omitted).

The doctrine's roots lie in two jurisdictional statutes, 28 U.S.C. § 1257, in which Congress granted appellate jurisdiction to the Supreme Court over certain final judgments of a State's highest court, and 28 U.S.C. § 1331, which provides that federal "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." See id., 544 U.S. at 283–86 (2005); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Tr. Co., 263 U.S. 413, 416 (1923); McKithen v. Brown, 481 F.3d 89, 96 (2d Cir. 2007); Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005). In Feldman, the Supreme Court explained that "appellate jurisdiction

14

to reverse or modify a state-court judgment is lodged . . . exclusively in" the Supreme Court by 28 U.S.C. § 1257. Exxon Mobil Corp., 544 U.S. at 283 (citing Feldman, 460 U.S. 462). 28 U.S.C. § 1331, on the other hand, "is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments." Id. at 292. Thus, "[i]f, instead of seeking review of an adverse state supreme court decision in the Supreme Court, [plaintiffs] sued in federal district court, the federal action would be an attempt to obtain direct review of the state supreme court decision and would represent a partial inroad on Rooker-Feldman's construction of 28 U.S.C. § 1257." Id. at 287 (quotation marks omitted). As a reflection of the doctrine's statutory rather than constitutional origins, there is no jurisdictional bar that prevents Congress from reversing course and giving the lower federal courts appellate jurisdiction over the same state court judgments. What Congress gives, Congress can later modify.

The concurrence attempts to distinguish or sideline the long line of cases in which we have assumed hypothetical jurisdiction. While this Court has appropriately assumed jurisdiction in some circumstances, the concurrence asserts, we have been "more hesitant" to do so when "faced with plainly

15

jurisdictional limitations." See post 9–12.  But the cases cited by the concurrence in support of this view are inapposite; unlike this case, they involved a straightforward jurisdictional issue or a potentially complicated merits question, or they addressed Article III rather than statutory jurisdiction.  See United States ex rel. Hanks v. United States, 961 F.3d 131, 138 (2d Cir. 2020) (noting that the statutory jurisdictional question was "relatively straightforward"); Ventura de Paulino v. N.Y.C. Dep't of Educ., 959 F.3d 519, 530 n.45 (2d Cir. 2020) (acknowledging that there exists a "discretionary exception to Steel Co." allowing a court to "dispose of the case on the merits without addressing a novel question of jurisdiction"); C. Hudson Gas & Elec. Corp. v. FERC, 783 F.3d 92, 108–119 (2d Cir. 2015) (offering no suggestion that the substance of the claims was plainly without merit); ProShipLine, Inc. v. Aspen Infrastructures, Ltd., 585 F.3d 105, 113 n.7 (2d Cir. 2009) (noting its intention to address whether the court had Article III jurisdiction).

Our established practice of assuming hypothetical statutory jurisdiction is not unique.  The majority of our sister circuits have assumed jurisdiction under similar circumstances in the wake of Steel Co.  See, e.g., Am. Hosp. Ass'n v. Azar, 964 F.3d 1230, 1246 (D.C. Cir. 2020); United States v. Olson, 867 F.3d 224, 228 (1st

Cir. 2017); Montague v. NLRB, 698 F.3d 307, 313 (6th Cir. 2012); Minesen Co. v. McHugh, 671 F.3d 1332, 1337 (Fed. Cir. 2012); Jordon v. Att'y General of U.S., 424 F.3d 320, 327 n.8 (3d Cir. 2005); Lukowski v. INS, 279 F.3d 644, 647 n.1 (8th Cir. 2002).

In summary, we may assume hypothetical statutory jurisdiction in order to resolve this appeal on the merits because the Rooker-Feldman doctrine does not implicate Article III jurisdiction. Doing so is particularly appropriate in this case, where the jurisdictional issue is both novel and arguably complex, while Butcher's claims are plainly meritless.[5]

---

[5] We have never addressed whether the Rooker-Feldman doctrine applies where, as here, there is a pending state appeal. District court decisions in our circuit show that this question may not be as easily answered as our concurring colleague suggests, for reasons stated by our colleague Judge Bianco when he was sitting on the district court. See Dekom v. Fannie Mae, No. 17-CV-2712, 2019 WL 1403116, at *2 (E.D.N.Y. Mar. 28, 2019); Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., 701 F. Supp. 2d 340, 347–48 (E.D.N.Y. 2010). Indeed, district judges within our circuit that have grappled with this issue have concluded that Rooker-Feldman applies even where there is a pending state appeal of the challenged judgment. See Gribbin v. N.Y. State Unified Court Sys., No. 18-CV-6100 (PKC), 2020 WL 1536324, at *3 n.6 (E.D.N.Y. Mar. 31, 2020); Campbell v. Bank of Am., N.A., No. 19-CV-11 (VB), 2019 WL 4083078, at *4 (S.D.N.Y. Aug. 29, 2019); Zapotocky v. CIT Bank, N.A., 587 B.R. 589, 596 (S.D.N.Y. 2018); Deraffele v. City of New Rochelle, No. 15-CV-282 (KMK), 2016 WL 1274590, at *7 (S.D.N.Y. Mar. 30, 2016). Although there is contrary authority from our sister circuits that supports a conclusion that Rooker-Feldman does not pertain to these circumstances, see, e.g., Parker v. Lyons, 757 F.3d 701, 705-06 (7th Cir. 2014) (collecting cases), this Court has strongly suggested—without deciding—that it does. See generally Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 426 & n.1 (2d Cir. 2014). Rather than address this

CONCLUSION

For the foregoing reasons, Butcher's complaint failed to plausibly allege RICO violations or a § 1983 conspiracy. The judgment of the District Court is AFFIRMED.

issue—one of first impression for our Court—we affirm the dismissal of Butcher's claims under Rule 12(b)(6), as that result is foreordained by well-established circuit precedent. See Moore, 409 F.3d at 511 n.5 (assuming jurisdiction to resolve appeal where statutory standing question "remain[ed] unresolved in this Circuit"); Vera, 946 F.3d at 137 n.22 (explaining that "it would be ironic if, in our desire to avoid rendering an advisory opinion, we were to address a novel jurisdictional question in a case where the result is foreordained by another decision of this Court" (quotation marks and brackets omitted)). We need not pursue the matter here where we can easily affirm on another, clearly established ground.

MENASHI, *Circuit Judge*, concurring in part and concurring in the judgment:

I do not agree with the court that "we may assume hypothetical jurisdiction where the jurisdictional issue is statutory in nature." *Ante* at 12. I write separately to express my view that we should not sidestep questions of subject-matter jurisdiction. After considering the jurisdictional question here, I conclude that we have jurisdiction over Butcher's appeal and may reach the merits of his claims. Accordingly, I concur in the part of the court's opinion that dismisses Butcher's claims under Rule 12(b)(6) and concur in the judgment.

Federal courts, such as ours, "are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Because of this basic principle, the Supreme Court has squarely rejected the practice of "'assuming' jurisdiction for the purpose of deciding the merits—the 'doctrine of hypothetical jurisdiction'"— because it "carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

In *Steel Co.*, the Supreme Court made clear that "[t]he statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects." *Id.* at 101. Accordingly, for a court "to resolve contested questions of law when its jurisdiction is in doubt" is, "by very definition, for a court to act ultra vires." *Id.* at 101-02.

Despite this precedent, our court has continued to employ the doctrine of hypothetical jurisdiction to bypass questions of "statutory jurisdiction." *See, e.g.*, *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 816 n.11 (2d Cir. 2000). In some of the cases in which the court has done so, it seems to have confused non-jurisdictional questions with true jurisdictional limitations. For example, to the extent that a prior decision bypassed an issue of "statutory standing" to address the merits, it was not assuming jurisdiction. *See Lexmark Int'l v. Static Control Components*, 572 U.S. 118, 128 n.4 (2014) (noting that "statutory standing" previously has been treated "as effectively jurisdictional" even though it "does not implicate subject-matter jurisdiction"); *see also Whitaker v. Dep't of Com.*, 970 F.3d 200, 210 & n.49 (2d Cir. 2020).

But to the extent circuit precedent purports to afford us discretion to ignore statutory limits on our jurisdiction, it is inconsistent with *Steel Co.* and with the Constitution. *See* U.S. CONST. art. 3, § 1; *see also Funk v. Belneftekhim*, 861 F.3d 354, 371 (2d Cir. 2017) ("Federal courts are not empowered to confer subject-matter jurisdiction on themselves."). Even if we have that discretion, I respectfully decline to exercise it.

In this case, however, it is clear that we have jurisdiction over Butcher's claims and that the district court erred in concluding that the *Rooker-Feldman* doctrine prevents the court from exercising jurisdiction over those claims. The *Rooker-Feldman* doctrine "is confined to cases … brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). When Butcher commenced the district court proceedings in this case, his state-court appeal was still pending—and he ultimately *prevailed* in state court. He was not a

state-court loser injured by a judgment entered before the district court proceedings commenced.

When our court has indulged in the doctrine of hypothetical jurisdiction, it has said it would do so only "where the jurisdictional issues are complex." *United States ex rel. Hanks v. United States*, 961 F.3d 131, 137 (2d Cir. 2020) (quoting *Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 338 n.2 (2d Cir. 2006)). But here, the jurisdictional issue could not be simpler. "Since *Saudi Basic Industries*, all federal circuits that have addressed the issue have concluded that *Rooker-Feldman* does not apply if, as here, a state-court appeal is pending when the federal suit is filed." *Parker v. Lyons*, 757 F.3d 701, 705 (7th Cir. 2014) (citing cases). To resolve this jurisdictional issue, we need only adopt the unanimous position of every other circuit court to address it. Unlike the court, I see no reason to avoid doing so.

Because we have jurisdiction to consider the merits of Butcher's claims, and because I agree with the court that "Butcher's complaint failed to state any claim on which relief could be granted," *ante* at 11, I concur in the part of the court's opinion that addresses Butcher's failure to state a claim and concur in the judgment affirming the dismissal of his complaint.

## I

"It is a fundamental precept that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). In this case, the district court held that the federal courts lack subject-matter jurisdiction over Butcher's claims. We cannot ignore that ruling and decide the merits of Butcher's claims without assuring ourselves that we have subject-matter jurisdiction.

*See Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001) ("[B]efore deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction."). "Without jurisdiction the court cannot proceed at all." *Ex parte McCardle*, 74 U.S. 506, 514 (1869).

**A**

In *Steel Co.*, the Supreme Court explained that "[t]he statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers." 523 U.S. at 101. Subsequently, in *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999), the Court held that although "subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues." In so holding, the Court expressly affirmed that it is "subject-matter jurisdiction"—not some subset of subject-matter jurisdiction, such as "Article III jurisdiction," *ante* at 13, or "constitutional" jurisdiction, *id.* at 15—that must precede a decision on the merits. *Ruhrgas*, 526 U.S. at 584.

The Court in *Steel Co.* defined "subject-matter jurisdiction" as "the courts' statutory or constitutional power to adjudicate the case." 523 U.S. at 89 (emphasis omitted); *see also Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("Subject-matter jurisdiction … is an Art. III as well as a statutory requirement."). Nothing in this definition or the Court's holding suggests that limitations on subject-matter jurisdiction are less binding when created by statute rather than by the Constitution.

*Ruhrgas* confirms the scope of the *Steel Co.* rule. In *Ruhrgas*, the Supreme Court addressed the sequencing of two jurisdictional issues: personal jurisdiction and the statutory grant of subject-matter jurisdiction under several statutes. 526 U.S. at 579-80. "In holding that

4

there is no mandatory ordering of *jurisdictional* issues, the Court clearly treated the issue of whether a claim fits within a statutory grant of subject-matter jurisdiction as being covered by the *Steel Co.* rule of priority." *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 518 (D.C. Cir. 2018) (Edwards, J., concurring). To be sure, the Supreme Court has sometimes discussed the jurisdiction "that is authorized by Article III of the Constitution," on the one hand, "and the statutes enacted by Congress," on the other. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). "But this merely highlights that both requirements exist; it does not intimate that the requirements delineated in a statutory grant of jurisdiction are any less a constraint on courts' power than the requirements described directly in the Constitution." *Kaplan*, 896 F.3d at 517 (Edwards, J., concurring); *see also Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) ("Only Congress may determine a lower federal court's subject-matter jurisdiction."); *Sheldon v. Sill*, 49 U.S. 441, 449 (1850) ("Courts created by statute can have no jurisdiction but such as the statute confers.").

Accordingly, a "federal court acts 'ultra vires' regardless of whether its jurisdiction is lacking because of the absence of a requirement specifically mentioned in Article III … or because Congress has repealed its jurisdiction to hear a particular matter." *Seale v. INS*, 323 F.3d 150, 156 (1st Cir. 2003). Before addressing the merits, a federal court must confirm that it has subject-matter jurisdiction conferred by statute because, "with limited exceptions, a congressional grant of jurisdiction is a *prerequisite* to the exercise of judicial power." *Patchak v. Zinke*, 138 S. Ct. 897, 907 (2018). "'To deny this position' would undermine the separation of powers by 'elevat[ing] the judicial over the legislative branch.'" *Id.* (quoting *Cary v. Curtis*, 44 U.S. 236, 245 (1845)). In fact, our court recently reaffirmed the principle that lower courts "may not adjudicate a case or

5

controversy unless authorized by *both* Article III of the United States Constitution and a federal jurisdictional statute." *United States v. Assa Co.*, 934 F.3d 185, 188 (2d Cir. 2019) (emphasis added); *see also Kings Choice Neckwear, Inc. v. Pitney Bowes, Inc.*, 396 F. App'x 736, 736 n.1 (2d Cir. 2010); *In re Auction Houses Antitrust Litig.*, 42 F. App'x 511, 515 (2d Cir. 2002) ("Our jurisdiction is limited by both statute … and by Article III of the United States Constitution.").

Under the doctrine of hypothetical jurisdiction that the court applies today, *see ante* at 11-17, we are not constrained by jurisdictional statutes. If the court were right, we could assume jurisdiction over cases that Congress has barred us from considering. We could assume original jurisdiction over federal question and diversity of citizenship cases. *See* 28 U.S.C. §§ 1331-32. We could assume appellate jurisdiction to review the decisions of other courts of appeals, *see id*. § 1254, or the decisions of district courts in other circuits, *see id*. § 1294. We could even assume jurisdiction over matters within the exclusive jurisdiction of the U.S. Court of Appeals for the Federal Circuit, *see id*. § 1295, the U.S. Court of Appeals for the D.C. Circuit, *see, e.g.*, 8 U.S.C. § 1535, or the U.S. Court of Appeals for Veterans Claims, *see* 38 U.S.C. § 7252. Each of these limitations on our jurisdiction is of "statutory rather than constitutional origins," and "there is no jurisdictional bar that prevents Congress from reversing course and giving" this court jurisdiction over those matters. *Ante* at 15.

This is not what the Supreme Court meant when it said that "[t]he statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers." *Steel Co.*, 523 U.S. at 101; *see also Seale*, 323 F.3d at 156 n.5 ("While the Constitution defines the limits of judicial power, it is up

6

to Congress to prescribe how much of it shall be exercised by the lower courts.").

I recognize that the doctrine of hypothetical jurisdiction allows the court to ignore statutory limits on our jurisdiction only when the plaintiff's claims will be dismissed on the merits. *See Steel Co.*, 523 U.S. at 93 (discussing the practice of assuming jurisdiction when "the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied"); *Ivanishvili*, 433 F.3d at 338 n.2 (approving of hypothesizing jurisdiction when "the substance of the claim is … plainly without merit"). But even a dismissal on the merits can create binding precedent on important legal questions. In a dismissal on the merits, the court may define the essential "elements a plaintiff must plead to state a claim" for a particular cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).[1] The court may also determine the scope and application of affirmative defenses including "various types of estoppel, … a wide range of forms of legal immunity from suit, the equitable doctrine of laches, a claim of privilege, … [and] the barring effect of res judicata and related preclusion principles."[2] To affirm the district court here, the court interpreted the requirements of 18 U.S.C. § 1962(c)-(d) and 42 U.S.C. § 1983.

---

[1] We have recently opined, for example, on the "requisite elements of an ERISA estoppel claim," *Sullivan-Mestecky v. Verizon Commc'n Inc.*, 961 F.3d 91, 100 (2d Cir. 2020), the scope of vertical or horizontal relatedness necessary to "establish a pattern of racketeering activity" under RICO, *Halvorssen v. Simpson*, 807 F. App'x 26, 29 (2d Cir. 2020), and the notice a plaintiff must give to his or her employer of a disability to state a reasonable accommodation claim, *Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 82 (2d Cir. 2020).

[2] 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357, pp. 721-28 (3d ed. 2004) (footnotes omitted).

Opinions issued by the court, even when our jurisdiction is in doubt, are "binding precedent upon this Court," *Sohm v. Scholastic Inc.*, 959 F.3d 39, 50 (2d Cir. 2020), and upon "lower courts in this Circuit," *Newsom-Lang v. Warren Int'l*, 129 F. Supp. 2d 662, 664 (S.D.N.Y. 2001). These opinions involve the exercise of the judicial power and may follow only from statutory authorization. A court may not "pronounce upon the meaning" of a law "when it has no jurisdiction to do." *Steel Co.*, 523 U.S. at 101-02. Accordingly, "[t]o dismiss a claim on the merits, or to affirm such dismissal, a court must have jurisdiction." *Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 566 (2d Cir. 2016).

It is true that Congress may grant us jurisdiction and that Congress may take it away. *See ante* at 15. When Congress grants us jurisdiction, we may exercise it. When Congress takes it away, we may not.[3]

---

[3] This case is even more remarkable than the ordinary case in which a court assumes hypothetical jurisdiction to reach the merits. Here, the court does not simply ignore a jurisdictional question but considers that question and appears to be convinced that we *lack* jurisdiction in this case. *Ante* at 17 n.5 (citing district court precedents that "have concluded that *Rooker-Feldman* applies even where there is a pending state appeal of the challenged judgment" and circuit precedent that, in the court's view, "strongly suggest[s] … that it does"). Despite this conclusion about its own jurisdiction, the court proceeds to the merits. I do not think the court is correct about the scope of the *Rooker-Feldman* doctrine, as I explain in Part II. But if the court believes what it says—that the doctrine likely deprives this court of subject-matter jurisdiction over this case—it should not be deciding the case on the merits. "It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction." *Funk*, 861 F.3d at 371 (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000)).

**B**

The court relies on circuit precedent for the proposition that we may apply the doctrine of hypothetical jurisdiction even after *Steel Co.* *See ante* at 11-13. When evaluating these precedents, it is important to recall that it has been "commonplace" in judicial opinions for the word "jurisdiction" to refer to limitations that are not truly jurisdictional, such as the elements of a cause of action. *Steel Co.*, 523 U.S. at 90; *see also id*. ("'Jurisdiction,' it has been observed, 'is a word of many, too many, meanings.'"). We therefore ought to distinguish carefully "between two sometimes confused or conflated concepts: federal-court 'subject-matter' jurisdiction over a controversy; and the essential ingredients of a federal claim for relief." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006).

In *Arbaugh*, the Supreme Court explained that "when Congress does not rank a statutory limitation … as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id*. at 516. And in *Lexmark*, the Court noted that prior references in the caselaw to "prudential" or "statutory standing" were misleading because "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional power to adjudicate the case." 572 U.S. at 128 n.4.

Our cases assuming hypothetical jurisdiction—even though invoking a concept of "statutory jurisdiction"—often do not involve "the court's statutory or constitutional power to adjudicate the case" but rather other, nonjurisdictional limitations. *See, e.g.*, *Moore v. Consol. Edison Co.*, 409 F.3d 506, 511 n.5 (2d Cir. 2005) (exercising "hypothetical jurisdiction" to bypass a question involving prudential third-party standing requirements).

9

For example, in *Doyle v. Department of Homeland Security*, 959 F.3d 72, 78-79 (2d Cir. 2020), the court assumed "statutory jurisdiction" to avoid considering the district court's conclusion that the Federal Records Act "precludes judicial review" under the Administrative Procedure Act of certain claims. *Doyle v. DHS*, 331 F. Supp. 3d 27, 62 (S.D.N.Y. 2018) (citing *Armstrong v. Bush*, 924 F.2d 282, 297 (D.C. Cir. 1991)). That issue, however, involves the availability of a cause of action.[4] "Whether a cause of action exists is not a question of jurisdiction, and may be assumed without being decided." *Air Courier Conf.*, 498 U.S. at 523 n.3; *cf. Main St. Legal Servs.*, 811 F.3d at 566. In *Abimbola v. Ashcroft*, 378 F.3d 173, 180 (2d Cir. 2004), the court exercised "hypothetical jurisdiction" to avoid deciding whether an issue the petitioner had failed to raise before the agency was properly before the court under 8 U.S.C. § 1252(d)(1). Although some courts have held that the requirement of issue exhaustion is jurisdictional, *see, e.g.*, *Massis v. Mukasey*, 549 F.3d 631, 639 (4th Cir. 2008), our court has held that it is not a "jurisdictional requirement," *Lin Zhong v. DOJ*, 480 F.3d 104, 120 (2d Cir. 2007).

Similarly, in *Fama*, the court invoked "hypothetical jurisdiction" to avoid a question involving the one-year statute of limitations for habeas petitions and relation back under the Federal Rules of Civil Procedure. 235 F.3d at 816 & n.11. Our court has said,

---

[4] *See Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984) ("The APA confers a general cause of action … but withdraws that cause of action to the extent the relevant statute 'preclude[s] judicial review.'") (quoting 5 U.S.C. § 701(a)(1)); *see also Air Courier Conf. of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 523 n.3 (1991) (noting that "[t]he judicial review provisions of the APA are not jurisdictional, so a defense based on exemption from the APA can be waived" and that whether a statute precludes review "is in essence a question whether Congress intended to allow a certain cause of action") (internal citation omitted).

however, that "the one-year period is a statute of limitations rather than a jurisdictional bar." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). Finally, in *United States v. Miller*, 263 F.3d 1, 4 n.2 (2d Cir. 2001), the court exercised "a form of hypothetical jurisdiction" to avoid deciding whether the appeal met the requirements of 18 U.S.C. § 3742(a). Although our court has, prior to *Arbaugh*, described § 3742(a) as jurisdictional,[5] a better, more recent view is that § 3742(a) imposes "a mandatory limit on our power, not a subject-matter jurisdiction limit on our power," *United States v. Marshall*, 954 F.3d 823, 827 (6th Cir. 2020).[6]

In other cases, the court may have avoided true jurisdictional questions without offending the *Steel Co.* rule of priority. In *In re Arbitration Between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 497-98 (2d Cir. 2002), the court relied on "hypothetical jurisdiction" to apply the doctrine of *forum non conveniens* without addressing a question of statutory jurisdiction. The Supreme Court, however, has specifically held that *Steel Co.* allows a court to dismiss a case for *forum non conveniens* before considering jurisdiction because it is a threshold, non-merits

---

[5] *See, e.g., United States v. Doe*, 93 F.3d 67, 68 (2d Cir. 1996); *United States v. Lawal*, 17 F.3d 560, 563 (2d Cir. 1994).

[6] *See Marshall*, 954 F.3d at 826 ("It's usually a mistake, as one case after another now shows, to treat a statutory limit on our power as a statutory limit on our subject-matter jurisdiction. More often than not, the [Supreme] Court has explained, what might seem to be a limit on our subject-matter jurisdiction amounts to a 'mandatory claim-processing rule' or a mandatory limit on our authority to grant a certain form of relief."). Even though the Supreme Court spoke of § 3742(a) in terms of "jurisdiction" in *United States v. Ruiz*, 536 U.S. 622, 627-28 (2002), it did so before it decided *Arbaugh* and only in "dicta that the Court did not follow in its disposition of the case," *In re Sealed Case*, 449 F.3d 118, 123 (D.C. Cir. 2006).

consideration. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007) ("We hold that a district court has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection."); *see Ruhrgas*, 526 U.S. at 585 ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits.").

These cases did not entail skipping over jurisdictional limitations to reach the merits. When faced with plainly jurisdictional limitations, the court has been more hesitant to hypothesize jurisdiction. *See, e.g., Hanks*, 961 F.3d at 138 (remanding "for the district court to consider the jurisdictional question"); *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 530 (2d Cir. 2020) (noting that a court should address jurisdiction first "in all but the rarest of cases"); *C. Hudson Gas & Elec. Corp. v. FERC*, 783 F.3d 92, 103 (2d Cir. 2015); *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105, 113 n.7 (2d Cir. 2009) ("[W]e think it advisable to [address Article III jurisdiction] … as part of a complete analysis of the issues on appeal.").

This case unmistakably implicates "the court's statutory or constitutional power to adjudicate." *Lexmark*, 572 U.S. at 128 n.4 (emphasis omitted). The other circuits that have considered whether it is appropriate to bypass a *Rooker-Feldman* question to reach the merits have concluded that assuming hypothetical jurisdiction in this context is improper. *See, e.g., Alyshah v. United States*, 241 F. App'x 665, 668 n.3 (11th Cir. 2007) (holding that "a court may not assume 'hypothetical jurisdiction' to decide the merits of a case despite its lack of jurisdiction" due to the *Rooker-Feldman* doctrine); *In re Knapper*, 407 F.3d 573, 580 n.15 (3d Cir. 2005); *Nguyen v. Phillips*, 69 F. App'x 358, 359 n.3 (9th Cir. 2003) (noting that "[w]e must consider … jurisdictional challenges" under the *Rooker-Feldman* doctrine "before

turning to the merits of a case"); *Hutcherson v. Lauderdale Cty.*, 326 F.3d 747, 755 (6th Cir. 2003) ("*Rooker-Feldman* should be considered first since its application strips federal courts of jurisdiction and the ability to hear a res judicata, or other affirmative, defense."). These courts are correct; we may not hypothesize jurisdiction to reach the merits when our subject-matter jurisdiction is in doubt.[7]

The court argues that we may assume jurisdiction here because the "result is foreordained by well-established circuit precedent." *Ante* at 17 n.5. That notion finds some support in the Supreme Court's decision in *Steel Co.* to reaffirm *Norton v. Mathews*, 427 U.S. 524 (1976), and *Secretary of Navy v. Avrech*, 418 U.S. 676 (1974) (per curiam). *Steel Co.*, 523 U.S. at 98-99. Although the Supreme Court acknowledged that these two cases "diluted the absolute purity of the rule that Article III jurisdiction is always an antecedent question," it also held that the cases created only a narrow exception to that rule for

---

[7] As the court notes, other circuits have retained the doctrine of hypothetical statutory jurisdiction even after *Steel Co. Ante* at 16-17. But the circuits have not done so uniformly, *see, e.g.*, *Friends of the Everglades v. EPA*, 699 F.3d 1280, 1288 (11th Cir. 2012) ("Even if the resolution of the merits were foreordained—an issue we do not decide—the Supreme Court has explicitly rejected the theory of 'hypothetical jurisdiction.' … [A]n inferior court must have both statutory and constitutional jurisdiction before it may decide a case on the merits."), or without doubts, *see, e.g.*, *Seale*, 323 F.3d at 156 ("As courts created by statute, we can have no jurisdiction but such as the statute confers. A federal court acts 'ultra vires' regardless of whether its jurisdiction is lacking because of the absence of a requirement specifically mentioned in Article III, such as standing or ripeness, or because Congress has repealed its jurisdiction to hear a particular matter.") (internal quotation marks and citation omitted); *Kaplan*, 896 F.3d at 517-19 (Edwards, J., concurring) ("I doubt that we can now say that a lack of statutory jurisdiction need not be a barrier to deciding issues on the merits. … [T]here is no priority given to 'Article III jurisdiction' over 'statutory jurisdiction.'").

circumstances in which "the merits question [has been] decided in a companion case" such that "the outcome of [the instant case] … [is] foreordained." *Id*. (emphasis omitted).

In *Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 137 n.22 (2d Cir. 2019), we explained that the outcome of a previous case "was indisputably 'foreordained'" where a collateral proceeding, "argued in tandem," had "definitively resolved the merits question at issue." Like *Norton* and *Avrech*, *Vera* is limited to a "peculiar" and "extraordinary procedural posture[]" in which "the merits question was decided *in a companion case*." *Steel Co.*, 523 U.S. at 98. But unlike *Norton*, *Avrech*, and *Vera*, the merits issue here—whether Butcher plausibly stated a claim upon which relief can be granted—has not been "dispositively resolved in a companion case." *Id*. No case, let alone a companion case, has foreordained the outcome of Butcher's appeal. The court decides that issue here, for the first time, after hypothesizing subject-matter jurisdiction.

## C

Even if the court may hypothesize jurisdiction despite the *Steel Co.* rule, there remains the separate question of "whether, and when, it *should*." *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 434 (2010) (Thomas, J., concurring in the judgment). Although our obligation to exercise jurisdiction where it exists is "virtually unflagging," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), we are never obligated to hypothesize jurisdiction. Doing so is, at most, a matter of discretion. *See ante* at 12 (arguing that we "may" assume hypothetical jurisdiction).

When this court has recognized such discretion, it has been careful to create limits. The assumption of jurisdiction "is prohibited in all but the narrowest of circumstances," *Ortiz-Franco v. Holder*, 782

14

F.3d 81, 86 (2d Cir. 2015), *abrogated on other grounds by Nasrallah v. Barr*, 140 S. Ct. 1683 (2020), and is allowed only "'where the jurisdictional issues are complex'" rather than "relatively straightforward," *Hanks*, 961 F.3d at 137-38 (quoting *Ivanishvili*, 433 F.3d at 338 n.2); *see also Levin*, 560 U.S. at 434 (Thomas, J., concurring in the judgment) ("[C]ourts should *not* dismiss cases on nonjurisdictional grounds where jurisdiction … involves no arduous inquiry and deciding it would not substantially undermine judicial economy.") (internal quotation marks and alteration omitted). Because the jurisdictional question here is straightforward, *see infra* Part II, our precedent suggests that we should not hypothesize jurisdiction.

When deciding whether to hypothesize jurisdiction, "[m]uch more than legal niceties are at stake"—even apart from the fact that the court could be acting ultra vires. *Steel Co.*, 523 U.S. at 101-02. A dismissal on the merits may have consequences that a jurisdictional dismissal lacks. For example, a dismissal on the merits is generally with prejudice, *see* Fed. R. Civ. P. 41(b), but a jurisdictional dismissal must be without prejudice, *see Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999). A dismissal on the merits has preclusive effects for future litigation, but a jurisdictional dismissal does not. *See St. Pierre v. Dyer*, 208 F.3d 394, 399-400 (2d Cir. 2000). And a dismissal on the merits could support a claim for malicious prosecution, whereas a jurisdictional dismissal might not. *See Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 283-85 (E.D.N.Y. 2014) (discussing the requirement of a "favorable termination" under New York law).

Although "[h]ypothetical jurisdiction produces nothing more than a hypothetical judgment," *Steel Co.*, 523 U.S. at 101, such a judgment can have real consequences. For that reason, the constraints

this court has placed on the doctrine of hypothetical jurisdiction are important.

In my view, it is generally improper for a court to exercise the judicial power in the absence of statutory authority to do so, and therefore we should "assure ourselves that the case is properly within our subject matter jurisdiction" before issuing a decision on the merits. *Wynn*, 273 F.3d at 157. The failure to do so, as in this case, is especially unjustified when the jurisdictional question before the court is simple. *Hanks*, 961 F.3d at 138.

## II

Butcher's state-court appeal was still pending when he filed suit in federal court. The jurisdictional question before us, therefore, could not be simpler: Was the state-court judgment "rendered before the district court proceedings commenced"? *Butcher v. Wendt*, No. 17-CV-7988, 2018 WL 6725308, at *4 (S.D.N.Y. Dec. 21, 2018).[8]

The *Rooker-Feldman* doctrine "is confined to cases" in which "the losing party in state court filed suit in federal court after the state proceedings ended." *Saudi Basic Indus.*, 544 U.S. at 284, 291. In this case, the state proceedings had not yet ended when Butcher filed suit because his state-court appeal was still pending. *Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 24-27 &

---

[8] Even as the court describes it, the question is simple: does the *Rooker-Feldman* doctrine apply "even where there is a pending state appeal of the challenged judgment"? *Ante* at 17 n.5. The court has already gone to the trouble of considering that question, examining relevant circuit precedent, surveying the precedents of other circuits and of district courts within our circuit, and concluding that the relevant case law "strongly suggests" an answer. *Id.* Yet the court still declines to take the final step and provide one.

n.13 (1st Cir. 2005). Accordingly, the *Rooker-Feldman* doctrine does not bar jurisdiction over Butcher's claims.

"Since *Saudi Basic Industries*, all federal circuits that have addressed the issue have concluded that *Rooker-Feldman* does not apply if, as here, a state-court appeal is pending when the federal suit is filed." *Parker*, 757 F.3d at 705; *see Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 459-61 (3d Cir. 2019); *Parker*, 757 F.3d at 705-06; *Nicholson v. Shafe*, 558 F.3d 1266, 1279 (11th Cir. 2009); *Guttman v. Khalsa*, 446 F.3d 1027, 1032 & n.2 (10th Cir. 2006); *Dornheim v. Sholes*, 430 F.3d 919, 923-24 (8th Cir. 2005); *Mothershed v. Justices of the Sup. Ct.*, 410 F.3d 602, 604 n.1 (9th Cir. 2005); *Federacion*, 410 F.3d at 24-27 & n.13.

This court has even suggested that this is the correct approach. *See Green v. Mattingly*, 585 F.3d 97, 103 (2d Cir. 2009) (noting that "the *Rooker-Feldman* doctrine would likely apply" if a plaintiff brought suit in federal court "at the completion of her appeals" in state court). We have approvingly cited caselaw from other circuits that endorses this approach to deciding "whether 'the state proceedings have "ended" within the meaning of *Rooker-Feldman*.'" *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 89 (2d Cir. 2005) (quoting *Federacion*, 410 F.3d at 25). We have also followed this approach in summary orders. *See Borrani v. Nationstar Mortg. LLC*, No. 19-2204, 2020 WL 3721480, at *2 (2d Cir. July 7, 2020) (holding that the *Rooker-Feldman* doctrine applied because the federal suit was filed after the "thirty-day deadline for appeal" of the state-court judgment). Other circuits, in fact, believe that our court has already taken a position on this issue. *See Malhan*, 938 F.3d at 459 (including the Second Circuit among those that have "cited *Federacion* with approval"); *Guttman*, 446 F.3d at 1032 (including the Second Circuit among those that have held "*Rooker-*

*Feldman* applies only to suits filed after state proceedings are final").[9] There is no reason for the court to avoid answering this simple question here.

The court says that our circuit has "strongly suggested" it would decide this question differently from every other circuit. *See ante* at 17 n.5 (citing *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 & n.1 (2d Cir. 2014)). But *Vossbrinck* does not indicate that we would do so. Although the plaintiff in *Vossbrinck* had a pending state-court appeal when he filed suit in federal court, we explicitly noted that "Vossbrinck [did] not argue that the relevant state judgment was not 'rendered before the district court proceedings commenced' for *Rooker-Feldman* purposes" and therefore reserved judgment on the question. 773 F.3d at 426 n.1. The court infers a "suggested" answer to the jurisdictional question from the fact pattern of the case. Yet it is well-established that "drive-by jurisdictional rulings of this sort … have no precedential effect." *Steel Co.*, 523 U.S. at 91.

At the time Butcher filed suit in federal court, the state proceedings had not yet ended. *Compare* App'x 66, *with id.* at 833. Therefore, the *Rooker-Feldman* doctrine does not bar our consideration of his claims and we have jurisdiction to consider Butcher's RICO and 42 U.S.C. § 1983 claims.

\* \* \*

The *Rooker-Feldman* doctrine "is not an abstention doctrine." *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 n.2 (6th Cir. 2020). Nor is it a preclusion doctrine, *Lance v. Dennis*, 546 U.S. 459, 466 (2006), or a doctrine of comity, *see Thana v. Bd. of License Comm'rs*, 827

---

[9] *See also* Phillips ex rel. Green v. City of New York, 453 F. Supp. 2d 690, 713-14 (S.D.N.Y. 2006).

F.3d 314, 320 (4th Cir. 2016). Rather, the *Rooker-Feldman* doctrine proceeds from the statutory grant of appellate jurisdiction to the Supreme Court over state court judgments in 28 U.S.C. § 1257, *see VanderKodde*, 951 F.3d at 405 (Sutton, J., concurring) ("[O]nly the United States Supreme Court, not federal district courts, may entertain appeals from final judgments of the state courts."). That statutory grant "precludes a United States district court from exercising subject-matter jurisdiction in an action" to which the doctrine applies. *Saudi Basic Indus.*, 544 U.S. at 291.

Unlike "the doctrines of preclusion, comity, and abstention," each of which may apply when there is concurrent federal and state litigation, *Thana*, 827 F.3d at 320, the *Rooker-Feldman* doctrine does not preclude "concurrent jurisdiction" in both federal and state courts while state-court appeals are pending, as was the case here. *Saudi Basic Indus.*, 544 U.S. at 292.

Having concluded that the *Rooker-Feldman* doctrine does not bar our consideration of Butcher's claims, I concur in the part of the court's opinion that holds that "Butcher's complaint failed to state any claim on which relief could be granted." *See ante* at 7-11. And because the complaint failed to state a claim, the district court properly dismissed it. I therefore concur in the judgment.