Doyle v. US Dept. of Homeland Security

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2019

(Argued: September 23, 2019          Decided: May 18, 2020)

Docket No. 18-2814-cv

———————————————————

KATE DOYLE, NATIONAL SECURITY ARCHIVE, CITIZENS
FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, KNIGHT
FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,

*Plaintiffs-Appellants*,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

*Defendant-Appellee*.

———————————————————

Before:

CALABRESI, LOHIER, and PARK, *Circuit Judges*.

This appeal involves a Freedom of Information Act (FOIA) request to the Secret Service seeking visitor logs for the White House Complex and President Trump's Mar-a-Lago home in Florida from January 20, 2017 to March 8, 2017. The Secret Service denied the request, claiming that the visitor logs were not "agency records" subject to FOIA. The District Court (Failla, *J.*) agreed with the Secret Service and refused to compel production of the withheld records. The District Court also dismissed for want of subject-matter jurisdiction the plaintiffs' claims that an agreement between the Secret Service and the Executive Office of the President that allegedly governed the maintenance of the visitor logs violated the Presidential Records Act and the

Federal Records Act. We **AFFIRM** the District Court's judgment and **DENY** the plaintiffs' request on appeal to amend their complaint.

ANNE L. WEISMANN, Citizens for Responsibility and Ethics in Washington, Washington, D.C. (Conor M. Shaw, Citizens for Responsibility and Ethics in Washington, Washington, D.C., Alexander Abdo, Jameel Jaffer, Knight First Amendment Institute at Columbia University, New York, NY, *on the brief*), *for Plaintiffs-Appellants* Kate Doyle, National Security Archive, Citizens for Responsibility and Ethics in Washington, Knight First Amendment Institute at Columbia University.

SARAH S. NORMAND, Assistant United States Attorney (Benjamin H. Torrance, Assistant United States Attorney, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY, *for Defendant-Appellee* United States Department of Homeland Security.

LOHIER, Circuit Judge:

In this appeal we principally consider whether certain visitor logs for the White House Complex and the President's Mar-a-Lago home in Florida are "agency records" subject to the Freedom of Information Act (FOIA). The plaintiffs, all but one of whom are government watchdog groups of one form or another, filed a request with the Secret Service, a component of the Department of Homeland Security (DHS), seeking visitor logs from January 20, 2017 to March 8, 2017. The Secret Service denied the request and withheld the logs, claiming that they were not agency records under FOIA. The

plaintiffs sued in federal court and moved to compel production of the withheld records, but the United States District Court for the Southern District of New York (Failla, J.) agreed with the Secret Service that the logs were not agency records and accordingly denied the plaintiffs' motion. The District Court also dismissed for lack of subject-matter jurisdiction the plaintiffs' separate claims under the Presidential Records Act (PRA) and the Federal Records Act (FRA) challenging an agreement between the Secret Service and the Executive Office of the President (EOP) that allegedly governed how the visitor logs were to be maintained.

For the following reasons, we **AFFIRM** the District Court's judgment and **DENY** the plaintiffs' request on appeal to amend their complaint.

**BACKGROUND**

1. Facts

      a. Records of Visitors to the White House Complex

In order to protect the President, the Secret Service monitors and controls access to the White House Complex, see 18 U.S.C. §§ 3056A(a)(1)-(2), 3056(a)(1), using two electronic systems. It uses the first system, known as the Worker and Visitor Entrance System (WAVES), to vet potential visitors and to

3

determine which portions of the White House Complex they can access. It uses the second system, known as the Executive Facilities Access Control System (EFACS), to control how visitors access the White House Complex once they arrive.

To operate these systems, the Secret Service needs to know who is visiting the White House Complex and when. So White House Complex employees notify the Secret Service of anticipated visitors and provide the Secret Service with personal information about each prospective visitor so that it can determine whether and under what conditions that visitor should be admitted. This information is stored in WAVES and includes the visitor's name, date of birth, and Social Security number; the date, time, and location of the planned visit; the name of the White House Complex employee who notified the Secret Service of the impending visit; and the name of the person to be visited.

When a visitor arrives, the Secret Service issues a badge that the visitor is required to swipe to enter and exit the White House Complex's various components. Each swipe generates an Access Control Record (ACR) within EFACS that captures the visitor's name, badge number, the date and time of

the swipe, and the location at which the badge was swiped. A visitor's ACRs thus show (or should show) the visitor's principal interactions with components of the White House Complex.

The Secret Service claims only a temporary interest in the ACR and WAVES records. Instead of retaining them, it routinely transfers the records of completed visits to the White House Office of Records Management. In 2015 the Secret Service and the White House sought to clarify their respective roles with respect to these records and to establish a framework for implementing policies and procedures governing both the WAVES and EFACS systems as well as the records within those systems. That year, the Secret Service and a component of the White House therefore executed a Memorandum of Understanding (2015 MOU), which stated in relevant part that:

> All records created, stored, used, or transmitted by, on, or through the unclassified information systems and information resources provided to the President, Vice President, and EOP shall remain under the exclusive ownership, control, and custody of the President, Vice President, or originating EOP component. Such records are hereinafter referred to as "EOP records."

Joint App'x 96. Although the parties contest how to interpret the 2015 MOU, all agree that it purports to vest control of ACR and WAVES records in the President and away from the Secret Service, leaving the Secret Service merely to manage and operate the WAVES and EFACS systems.

### b. Documents Related to Mar-a-Lago

The Secret Service had no comparable systems in place to screen or monitor presidential visitors to the President's Mar-a-Lago or Trump Tower homes. Nevertheless, in searching for records responsive to the plaintiffs' FOIA requests, the Secret Service managed to locate three categories of responsive documents related to Mar-a-Lago:[1] first, copies of the President's schedules for certain days; second, emails between Secret Service members

---

[1] Both parties agree that there are no records responsive to the FOIA requests regarding Trump Tower because the President did not visit Trump Tower during the relevant time period.

containing those schedules; and third, emails from the White House about expected visitors to Mar-a-Lago.

### c. The FOIA requests

On January 23, 2017, prior to the commencement of this case, one of the plaintiffs, Kate Doyle, sent to the Secret Service a FOIA request seeking all ACR and WAVES records created between January 20 to January 22, 2017. After a month passed without response, Doyle sent an administrative appeal of her request to the Secret Service. A few weeks later, on March 10, the plaintiffs collectively sent to the Secret Service a FOIA request seeking all ACR and WAVES records from January 20, 2017 until March 8, 2017, and all records of presidential visitors at Mar-a-Lago and Trump Tower in New York over the same time period. The Secret Service again failed to respond within the timeframe set forth in FOIA.

### 2. Procedural History

The plaintiffs filed this lawsuit in April 2017. They alleged that DHS (in effect, the Secret Service) unlawfully withheld the requested visitor logs in violation of FOIA, 5 U.S.C. § 552, and that the agency's failure to treat ACR and WAVES records as subject to FOIA violated both the FRA, 44 U.S.C.

§§ 2101, et seq., 3101, et seq., 3301, et seq., and the PRA, 44 U.S.C. § 2201 et seq.

DHS filed a Rule 56 motion for summary judgment on the plaintiffs' FOIA claims and a Rule 12(b) motion to dismiss the PRA and FRA claims for lack of subject-matter jurisdiction or, in the alternative, for failure to state a claim. The District Court granted in part and denied in part the motion for summary judgment and granted the motion to dismiss in its entirety. It concluded, as relevant here, that the visitor logs for Mar-a-Lago and the presidential components of the White House Complex were not "agency records" subject to disclosure under FOIA and that it lacked subject-matter jurisdiction over the FRA and PRA claims.

This appeal followed.

**DISCUSSION**

During the litigation DHS disclosed the requested visitor logs for the agency components of the White House Complex, but it refused to do so for the White House Complex's presidential components. See Main St. Legal Servs., Inc. v. Nat'l Sec. Council, 811 F.3d 542, 547 (2d Cir. 2016) (distinguishing agency components, which possess "substantial independent

8

authority" from the President and "exercise . . . specific functions" beyond "advis[ing] and assist[ing] the President," from presidential components, which "sole[ly] . . . advise and assist the President" (quotation marks omitted)). What remains at issue on appeal, therefore, are only the ACR and WAVES records for presidential components and the presidential schedule documents for Mar-a-Lago discussed above.

As to these materials, the plaintiffs press two main arguments on appeal. First, relying on United States Department of Justice v. Tax Analysts, 492 U.S. 136 (1989), they contend that the visitor logs were agency records and that the District Court's determination to the contrary was wrong. Second, citing cases from the D.C. Circuit, they urge us to vacate the District Court's dismissal of their PRA and FRA claims. See Armstrong v. Bush, 924 F.2d 282 (D.C. Cir. 1991) (Armstrong I); Armstrong v. Exec. Office of the President, 1 F.3d 1274 (D.C. Cir. 1993) (Armstrong II). We address each of these arguments in turn.

1. Agency Records

We review the District Court's grant of summary judgment as to the FOIA claims de novo, drawing all factual inferences in favor of the plaintiffs,

the non-moving parties.  See Paneccasio v. Unisource Worldwide, Inc., 532

F.3d 101, 107 (2d Cir. 2008).  Summary judgment "is proper only when there

is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  B.C. v. Mount Vernon Sch. Dist., 837 F.3d 152,

158 (2d Cir. 2016) (quotation marks omitted).

a.  FOIA and Tax Analysts

Subject to certain statutory exemptions, FOIA requires federal agencies

to make agency records available to the public upon request.  See 5 U.S.C.

§ 552(a)(3)(A), (b)(1)–(9).  To that end, FOIA grants federal district courts

"jurisdiction to enjoin [an] agency from withholding agency records and to

order the production of any agency records improperly withheld."  Id.

§ 552(a)(4)(B).  Although the term "agency record" is "defined neither in the

Act nor in its legislative history," Tax Analysts, 492 U.S. at 142; see Forsham v.

Harris, 445 U.S. 169, 178 (1980), the Supreme Court has explained that

documents may qualify as "agency records" if they (1) are created or obtained

by an agency, and (2) "have come into the agency's possession in the

legitimate conduct of its official duties," Tax Analysts, 492 U.S. at 144–45.

When there is a dispute about what qualifies as an agency record, "[t]he

10

burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not agency records." Id. at 142 n.3 (quotation marks omitted).

On appeal, the plaintiffs insist that the two-part test in Tax Analysts easily resolves this case because neither party disputes that the Secret Service obtained the visitor logs in furtherance of its duty to protect the President. Because both prongs of Tax Analysts are satisfied, the plaintiffs assert, the visitor logs necessarily qualify as agency records under FOIA.

Tax Analysts does not resolve this appeal. That case concerned a non-profit magazine company seeking disclosure of publicly available district court tax opinions that had been aggregated by the Department of Justice's Tax Division. Id. at 138–40. This case, by contrast, concerns the disclosure of virtually every visitor that the President received over a seven-week period at home and at work. Why does that matter? Because, the Supreme Court tells us, "special considerations control when the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated." Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 385 (2004). Tax Analysts does not suggest that those considerations

11

disappear when we interpret FOIA. To the contrary, as we explain below, they clearly exist in this case.

### b. Constitutional Avoidance

At stake here is the President's "constitutional prerogative of maintaining secrecy" as it relates to the confidentiality of his conversations and correspondence. Judicial Watch, Inc. v. U.S. Secret Serv., 726 F.3d 208, 224 (D.C. Cir. 2013) (quotation marks omitted). Though certainly not without limits, that prerogative serves under the circumstances of this case to ensure that the President receives frank and honest advice. See id. at 226. The plaintiffs' interpretation of FOIA threatens this prerogative. Compelled disclosure of the visitor logs would affect a President's ability to receive unfettered, candid counsel from outside advisors and leaders, both domestic and foreign, who were aware that their visits to the White House would be subject to public disclosure. Judge Garland aptly captured these significant concerns in Judicial Watch:

> Construing the term "agency records" to extend to
> White House visitor logs—regardless of whether
> they are in the possession of the White House or the
> Secret Service—could substantially affect the
> President's ability to meet confidentially with

> foreign leaders, agency officials, or members of the public. And that could render FOIA a potentially serious congressional intrusion into the conduct of the President's daily operations.

Id.

Like the D.C. Circuit in Judicial Watch, we think that the plaintiffs' view of FOIA raises a difficult constitutional question: whether Congress can, consistent with the separation of powers, require the President "to surrender [his] constitutional prerogative of maintaining secrecy regarding his choice of visitors (and therefore of outside advisors)." Id. at 224 (quotation marks omitted). We are bound to avoid deciding the constitutional question if the ambiguous statutory text to be interpreted—"agency records"—"fairly admits of a less problematic construction." Pub. Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 455 (1989); see Clark v. Martinez, 543 U.S. 371, 381 (2005) (the canon of constitutional avoidance "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts"). Although the plaintiffs urge us to conclude otherwise, we are not persuaded that the term "agency record" plainly applies to the visitor logs in this case. We have explained that agency

13

"control" is key to determining whether materials qualify as "agency records" under FOIA.  See Grand Cent. P'ship, Inc. v Cuomo, 166 F.3d 473, 479 (2d Cir. 1999).  We note that the D.C. Circuit in Judicial Watch found that its own control test yielded an "indeterminate" answer to essentially the same question relating to the electronic system that contains the ACR and WAVES records.  Judicial Watch, 726 F.3d at 218, 231.  And just as in Judicial Watch, the case before us "involves documents that an agency created in response to requests from, and information provided by, a governmental entity not covered by FOIA," namely, the Office of the President; those documents "contain visitor information provided by that Office"; "the non-covered entity—here, the White House—has manifested a clear intent to control the documents," such that "the agency is not free to use and dispose of the documents as it sees fit"; the Office of the President "cannot retain effective physical control over" the records because "Congress requires the President to accept the protection of the Secret Service"; and "disclosing the records would reveal the specific requests made by the non-covered entity—here, the Office of the President's requests for visitor clearance."  Id. at 222–23, 225 (quotation marks omitted).  Under these circumstances, the term "agency

records" may reasonably (though not necessarily) be interpreted to exclude the visitor logs at issue, in part because it is hard for us to "believe Congress intended that FOIA requesters be able to obtain from the gatekeepers of the White House what they are unable to obtain from its occupants." Id. at 233. We therefore follow the lead of Judicial Watch in declining to compel the disclosure of those logs under FOIA given the difficult but avoidable constitutional question that compelling disclosure would raise if we were to interpret "agency records" in a different way.

The plaintiffs urge us to ignore the constitutional avoidance canon for two reasons. As an initial matter, they argue that FOIA's various exemptions adequately protect the President's general interest in privacy and candid advice, even as FOIA requires disclosing the visitor logs here. In addition, they claim that resorting to the avoidance canon would exclude from FOIA many documents whose disclosure FOIA indisputably now permits. We are not persuaded by either argument.

First, resolving the issue of whether the visitor logs are exempt from FOIA would still require that we consider whether Congress may constitutionally compel the disclosure of the visitor logs in the absence of an

15

applicable exemption. That question is itself a difficult one. If Congress could do that, then the Office of the President would be required to evaluate the applicability of a FOIA exemption to every in-Complex meeting with a visiting advisor on a document-by-document basis. But "the burden of identifying those records on a document-by-document basis is substantial enough to make that an ineffective way of mitigating the kind of separation-of-powers concerns at issue here." Id. at 230. The question would, in other words, "be at least as difficult—and present separation-of-powers questions as least as serious—as deciding the question now before us." Id. But there is "nothing to be gained by trading one difficult question for another." Id.

Second, our decision in this case does not "create a sweeping tenth exemption to FOIA" as the plaintiffs claim. Appellants' Reply Br. 4. To the contrary, our application of the avoidance canon is limited to the very narrow circumstances involving the availability under FOIA of the President's schedules and visitor logs for Mar-a-Lago and the White House Complex respectively. Because that is the sole FOIA issue before us, we need not and do not address questions involving the availability under FOIA of pardon

16

documents, Office of Legal Counsel opinions, and Office of Government Ethics advice, all of which the plaintiffs fear our decision will cover.

For these reasons, we affirm the District Court's grant of summary judgment in favor of DHS on the FOIA claims.

2. The Federal Records Act and the Presidential Records Act

The plaintiffs also argue that the District Court erred in dismissing their claims under the FRA and the PRA for want of subject-matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). For purposes of this appeal, we assume without deciding that we have statutory jurisdiction under the FRA. See Conyers v. Rossides, 558 F.3d 137, 150 (2d Cir. 2009); Abimbola v. Ashcroft, 378 F.3d 173, 180 (2d Cir. 2004). As for the PRA, the Government concedes that the statute permits very "limited [judicial] review to assure that guidelines defining presidential records do not improperly sweep in nonpresidential records." Armstrong II, 1 F.3d at 1278; see id. at 1294 ("[T]he courts may review guidelines outlining what is, and what is not, a presidential record . . . ." (quotation marks omitted)).

On the merits, we view the facts in the light most favorable to the plaintiffs and review questions of law de novo. See Bascuñán v. Elsaca, 874

17

F.3d 806, 810 (2d Cir. 2017).  With those principles in mind, we conclude that

the plaintiffs failed to state a claim under the FRA or the PRA.  See Fed. R.

Civ. P. 12(b)(6).

a.  Statutory Background

The FRA and PRA cover government records in different ways.  The

FRA governs the creation, management, and disposal of federal records.  The

statute mandates that "[t]he head of each Federal agency shall make and

preserve records" documenting the business of the agency, 44 U.S.C. § 3101,

and that the federal Archivist promulgate rules regarding record

management and preservation that agency heads are obligated to follow, see

id. §§ 2904(a), (c)(1), 3105.  Federal agencies may not destroy records subject

to the FRA without first receiving the Archivist's approval.  See id. §§ 3302,

3314.  The PRA similarly covers the maintenance and disposal of records, but

it does so for a limited class of records defined as:

> documentary materials . . . created or received by the
> President, the President's immediate staff, or a unit or
> individual of the Executive Office of the President whose
> function is to advise or assist the President, in the course of
> conducting activities which relate to or have an effect upon
> the carrying out of the constitutional, statutory, or other
> official or ceremonial duties of the President.

18

Id. § 2201(2). The PRA grants the President exclusive access to, and custody and control over, these "Presidential records," id. § 2203(f), and permits the President to dispose of or destroy them as he sees fit, subject only to obtaining the views of the federal Archivist, see id. § 2203(c)–(e). But the PRA prohibits the President from designating as a presidential record any document that qualifies as an agency record under FOIA. See id. § 2201(2)(B)(i).

### b. Failure to State a Claim

The plaintiffs claim that the 2015 MOU violates the FRA and the PRA. The 2015 MOU, they explain, "declares that the records of visits to agency components of the EOP" be treated as presidential records instead of agency records subject to FOIA. Joint App'x 30–31.[2]

As the parties appear to agree is appropriate, we turn to the D.C. Circuit's well-developed precedent in the Armstrong decisions for guidance in evaluating the plaintiffs' challenges under the FRA and the PRA. See Armstrong I, 924 F.2d at 291–93; Armstrong II, 1 F.3d at 1292–94. As for the

---

[2] We note that the parties dispute whether the plaintiffs have challenged the 2015 MOU alone or also an earlier 2006 MOU. The District Court thought it the former. We agree. On appeal, the plaintiffs have acknowledged that the policy they challenge "is reflected in the 2015 MOU." Appellants' Reply Br. 26. Moreover, their operative complaint did not quote or cite the 2006 MOU or include it as an exhibit.

FRA, the purported recordkeeping guideline before us—the 2015 MOU—neither describes how ACR and WAVES records will be preserved nor permits the destruction of those records. The 2015 MOU instead provides that records will be controlled by the EOP component from which the records originated. Thus, when a record originates with an agency component subject to FOIA, the 2015 MOU clearly acknowledges that the record should be archived just as FOIA requires, not that it be treated as a record beyond FOIA's reach. We therefore reject the plaintiffs' claim that the 2015 MOU violates the FRA.

The plaintiffs' claim under the PRA fails for similar reasons. As noted, the PRA permits challenges to and judicial review of federal "guidelines outlining what is, and what is not, a presidential record." Armstrong II, 1 F.3d at 1294 (quotation marks omitted). But the 2015 MOU does not classify records in this way. True, it grants the President exclusive control over certain documents; but it does not describe or treat those documents as presidential records. Compare 44 U.S.C. § 2203(c)–(e) (PRA providing the President with unilateral authority to destroy presidential records) with Joint App'x 96–97 (2015 MOU stating that records related to EOP components will

be archived). And, again, the MOU makes clear that control over records that originate with an agency component rests with that agency component, not the President. For this reason, we also affirm the District Court's dismissal of the plaintiffs' claim under the PRA.

In summary, we conclude that the plaintiffs have failed sufficiently to allege that the 2015 MOU prescribes recordkeeping practices that violate the FRA or the PRA. See Fed. R. Civ. P. 12(b)(6).

3. Request to Amend

Finally, the plaintiffs ask for leave to amend their complaint for the second time, although they admit that they failed to make this request to the District Court. Of course, we are authorized to grant a request to amend that seeks to remedy defective allegations of jurisdiction. See 28 U.S.C. § 1653. Here, though, we have assumed that statutory jurisdiction exists under the FRA and the Government has conceded that limited judicial review exists under the PRA. Seeing no other basis to grant leave to amend directly on appeal, we deny the plaintiffs' request.

## CONCLUSION

We conclude that the visitor logs that the plaintiffs seek are not agency records subject to FOIA and that the plaintiffs failed to state a claim under the PRA or the FRA. We have considered the plaintiffs' remaining arguments and conclude that they are also without merit. For these reasons, we **AFFIRM** the District Court's judgment. We also **DENY** the plaintiffs' request to amend their complaint.