Nos. 20-3253(L)
*Behar v. Dep't of Homeland Sec.*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

———————

AUGUST TERM 2021
Nos. 20-3253(L), 20-3256(Con)

**RICHARD BEHAR,**
*Plaintiff-Appellee,*

v.

**UNITED STATES DEPARTMENT OF HOMELAND SECURITY,**
*Defendant-Appellant.*

———————

On Appeal from the United States District Court
for the Southern District of New York

———————

ARGUED: NOVEMBER 30, 2021
DECIDED: JULY 8, 2022

———————

Before:     PARK, NARDINI, and MENASHI, *Circuit Judges.*

Defendant-Appellant U.S. Department of Homeland Security appeals the order of the U.S. District Court for the Southern District of New York to release certain records pursuant to a Freedom of Information Act ("FOIA") request submitted by Plaintiff-Appellee Richard Behar. The Secret Service received the records from a

presidential campaign and transition to facilitate the agency's protection of the presidential candidate and President-elect. We hold that the records are not "agency records" under the FOIA because the records are not subject to the agency's control. Even if the records were subject to the agency's control, the district court erred in holding that 5 U.S.C. § 552(b)(7)(C) would not provide protection from disclosure. Accordingly, we **REVERSE** the judgment of the district court to the extent that it required the Secret Service to disclose the requested documents.

---

JACKSON BUSCH (David A. Schulz, Charles Crain, *on the brief*), Media Freedom & Information Access Clinic, Abrams Institute, Yale Law School, New Haven, CT, *for Plaintiff-Appellee*.

SARAH S. NORMAND, Assistant United States Attorney (Christopher Connolly, Assistant United States Attorney, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Defendant-Appellant*.

---

MENASHI, *Circuit Judge*:

Defendant-Appellant U.S. Department of Homeland Security ("DHS") appeals the judgment of the district court ordering the U.S. Secret Service, a component of DHS, to release certain records that Plaintiff-Appellee Richard Behar requested under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. We reverse the judgment of the district court on two grounds. First, the records are not "agency records" subject to the FOIA. Second, even if the records were eligible

2

for disclosure under the FOIA, Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), would shield the records from disclosure.

**BACKGROUND**

The FOIA requires a federal agency to disclose an "agency record" when a member of the public requests such disclosure, subject to enumerated exemptions. 5 U.S.C. § 552(f)(2)(A), (b)(1)-(9). This dispute arises from a FOIA request for schedules and visitor information from the presidential campaign and transition of Donald J. Trump covering the period in which Trump received Secret Service protection before his inauguration as President of the United States on January 20, 2017.

**I**

Behar, a journalist, submitted two FOIA requests to the Secret Service seeking visitor and scheduling documents from the campaign and transition of candidate and President-elect Trump that had been shared with the Secret Service. Behar first requested "[r]ecords identifying every individual who was screened and/or noted by the Secret Service" in connection with the agency's protection of Trump from November 1, 2015, to January 21, 2017, as well as "[a]ll records concerning any communication between the Secret Service and any individual employed by and/or affiliated with either the Trump Campaign and/or the Trump Organization regarding any individual" who had been so screened or noted. J. App'x 30-31.

When the Secret Service did not provide notice of a determination on his request within twenty days, Behar filed suit in the U.S. District Court for the Southern District of New York. *See* 5 U.S.C. § 552(a)(6)(A), (a)(6)(C)(i). The parties entered a joint

stipulation, which the district court adopted on February 21, 2018, that required the agency to conduct searches of potentially responsive records and to review those records on a rolling basis, with a plan to produce tranches monthly. During this process, the Secret Service disclosed in an email that it had identified Trump's schedules but deemed those records non-responsive to Behar's request.[1] As a result, on May 14, 2018, Behar filed a second FOIA request for "[a]ll schedules identified by the USSS" in that email. J. App'x 71.[2] The second request further broadened the category of records sought to "includ[e] all references to future meetings with Mr. Trump" and "[a]ny additional documents the USSS locates in conducting the searches described in the Joint Stipulation and Order that reference any individuals attending or expecting to attend meetings with Mr. Trump and/or the Trump family members and/or campaign officials described" in Behar's initial request. J. App'x 71 (citation omitted).

After processing Behar's second request, the Secret Service responded that it did not consider "the responsive documents" to be "agency records" because "[t]he schedules of candidate Trump and President-elect Trump provided to the Secret Service by the campaign and/or transition team are the property of a private entity which is not subject to FOIA" and "[t]he Secret Service does not exercise the requisite control over these records to satisfy the definition of an

---

[1] *See* J. App'x 77 ("[I]n the course of its review … the USSS identified some schedules that included references to future meetings with Mr. Trump. However, none of those schedules reflected any screening or notation of individuals by the USSS, and thus they were not identified as responsive to plaintiff's FOIA request.").

[2] Behar amended his complaint on August 21, 2018, to account for the May 14, 2018, request. J. App'x 55.

4

'agency record.'" J. App'x 87 (citing *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 231 (D.C. Cir. 2013)). The Secret Service also determined that "even if the schedules were agency records, they would be withheld in full" under Exemption 7(C) as "information compiled for law enforcement purposes the disclosure of which could lea[d] to an unwarranted invasion of personal privacy," among other exemptions. J. App'x 87.[3]

The government moved for summary judgment on October 3, 2018, and Behar cross-moved for summary judgment on October 31, 2018. On August 15, 2019, the district court denied Behar's motion for summary judgment and denied in part and granted in part the government's motion.[4] The district court considered whether Trump and third parties identified in the records—those who appeared on Trump's itineraries or gained access to facilities in Trump Tower— had privacy interests protected by Exemption 7(C). The district court explained that any privacy interests were "tempered by the fact that [Trump] was an aspiring and then successful candidate for federal office during the relevant period and that there has been no showing of potential unwelcome consequences on the part of the third party

---

[3] The Secret Service upheld these determinations in an administrative appeal. *See* J. App'x 99 ("Having reviewed your argument and the facts of this matter, it has been determined that the Secret Service does not exercise the requisite control over the records that were located to satisfy the definition of an 'agency record.'"); *id.* ("Upon review of this matter, it has been determined that these exemptions are still applicable to the records. Therefore, your appeal is denied.").

[4] The district court granted the government's motion for summary judgment with respect to the identities of law enforcement personnel and other security information captured in the requested documents. Behar has not appealed that decision.

visitors resulting from disclosure." *Behar v. DHS*, 403 F. Supp. 3d 240, 254 (S.D.N.Y. 2019). The district court thought it possible that "the public interest in disclosure outweighs the relevant privacy interests" because the documents "could reveal information advancing public knowledge of whom Mr. Trump relied upon in making cabinet and other presidential appointments [or in] determining his presidential priorities." *Id.* at 255.

The district court allowed the Secret Service "to provide additional declarations or other submissions in support of its exemption 7(C) withholdings," specifically to explain "whether the meetings related to Mr. Trump's candidacy or instead regarded personal matters" and "whether disclosure of the documents has the potential to result in unwelcome consequences on the part of the visitors." *Id.* at 255-56.

The Secret Service responded with declarations explaining that "protectees' schedules do not reveal anything about the manner in which the Secret Service conducts its activities." J. App'x 805. The Secret Service "assessed that the documents do not shed light on the workings of the Secret Service" and, because the documents covered only the campaign and transition, "the documents do not directly reflect the activities or operations of the Trump administration." J. App'x 818. Because the Secret Service was not involved in the activities of the campaign or transition, it was unable to evaluate "whether a given meeting was in furtherance of Mr. Trump's candidacy, presidency, business or personal interests" or "to make an informed judgment as to whether disclosure of the occurrence of a particular meeting or series of meetings would shed light on 'whom Mr. Trump relied upon in making cabinet and other presidential appointments [or in] determining his presidential priorities.'"

J. App'x 819 (quoting *Behar*, 403 F. Supp. 3d at 255). To evaluate who the visitors were and what the significance of their meetings might have been "would require the Secret Service to engage in speculation." J. App'x 819.

The Secret Service emphasized that it had access to the schedules and visitor information only to facilitate its provision of security services to the candidate and President-elect and that it had agreed to keep the documents confidential. Deputy Director Leonza Newsome III, for example, declared that

> [a]ll of the itineraries, schedules, and calendars at issue in this case, and the information regarding meetings contained in the remaining emails at issue, were provided to the Secret Service with the expectation of privacy and the expectation that they would not be disseminated beyond the Secret Service personnel who had the need of the information contained in the documents to perform their protective functions.

J. App'x 805. He explained that "the Secret Service understood that all schedules and visitor information provided by candidate and/or President-elect Trump were provided on a confidential basis, and the Secret Service treated the schedules and visitor information as confidential." J. App'x 805. "Compelled disclosure under FOIA of these schedules and emails," he said, "would harm the public interest, by jeopardizing the flow of information from protectees to the Secret Service, thereby increasing the difficulty of protecting Presidential candidates and Presidents-elect." J. App'x 806.

In addition to the declarations, the Secret Service provided the records for *in camera* review by the district court, and the agency

renewed its motion for summary judgment. On August 4, 2020, the district court issued a one-page order granting Behar's motion for summary judgment "largely for the reasons identified in its prior opinion." S. App'x 29. The government timely appealed.

## II

The records that remain at issue in this appeal are private schedules and visitor information provided by the Trump presidential campaign and transition to the Secret Service, at the agency's request, to facilitate the provision of security services to candidate and President-elect Trump. The records include (1) email chains forwarded from the Trump campaign and transition to the Secret Service and (2) scheduling documents and attachments sent from the Trump campaign and transition to the Secret Service.

The first category of documents consists of five email chains between Trump campaign officials and the Secret Service.[5] Four of the five emails refer to meetings that Trump planned to hold in the future.[6] The fifth email identifies individuals who needed access to certain areas within Trump Tower.

---

[5] The district court upheld the withholding of portions of the email chains that reflected "law enforcement investigative and protective information," J. App'x 108, and Behar does not challenge that aspect of the judgment on appeal. Only the portions of the records not already deemed exempt for that reason are before us.

[6] Specifically, the four "future-meeting" emails include an April 2016 email chain referring to a future meeting between Trump and an individual assisting with the preparation of a speech; a July 2016 email referring to an "ongoing" meeting between Trump, his staff, and another individual at Trump Tower; a July 2016 email referring to a meeting to occur that day; and a September 2016 email chain referring to a future meeting between

The second category of records consists of over 600 scheduling records, including Trump's calendars, itineraries, line schedules, and detailed schedules. These records range in detail. The calendars, itineraries, and line schedules include only general information such as the time and place of each scheduled meeting. The detailed schedules reveal the substantive matters at issue in the meetings as well as the names of attendees.

Most of the scheduling records were provided to the Secret Service during the transition period in which Trump was President-elect and bear a seal denoting the office of the President-elect. All the detailed schedules are marked as "confidential" and "[n]ot to be copied or shared." J. App'x 816. Emails attaching itineraries and calendars likewise note a "reminder to please not distribute this calendar as it is highly confidential." J. App'x 817.

## STANDARD OF REVIEW

The FOIA authorizes judicial review when "an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records'" so that the district court may "force an agency to comply with the FOIA's disclosure requirements." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quoting *DOJ v. Tax Analysts*, 492 U.S. 136, 142 (1989)). We review a district court's summary judgment decision de novo, *Ctr. for Const. Rts. v. CIA*, 765 F.3d 161, 166 (2d Cir. 2014), including the threshold determination of whether the requested records are "agency records" eligible for disclosure under the statute, *Doyle v. DHS*, 959 F.3d 72, 76 (2d Cir. 2020).

---

Trump and an individual, in which the non-public nature of the meeting is emphasized in the text of the email.

9

For those documents properly considered "agency records," once the agency has identified an applicable exemption and justified its application, our review is generally deferential to the agency's analysis. While "[t]he defending agency has the burden of showing that any withheld documents fall within an exemption to the FOIA," we "accord a presumption of good faith to an agency's affidavits or declarations," *NRDC v. EPA*, 19 F.4th 177, 183 (2d Cir. 2021) (internal quotation marks and alterations omitted), such that "when an agency provides 'reasonably detailed explanations' to support its decision to withhold a document, its 'justification is sufficient if it appears logical and plausible,'" *id.* (quoting *ACLU v. DOD*, 901 F.3d 125, 133 (2d Cir. 2018)).

## DISCUSSION

The district court's order granting summary judgment rested on the assumption that the documents at issue are "agency records" eligible for disclosure under the FOIA. That assumption was erroneous. We hold that the records do not qualify as "agency records" disclosable under the FOIA. Moreover, even if the records were properly considered "agency records" eligible for disclosure, the district court erred in weighing the relevant privacy interests and concluding that Exemption 7(C) did not apply.

## I

The district court erred in granting summary judgment to Behar because the requested records are not "agency records" within the meaning of the FOIA. That conclusion follows from our recent decision in *Doyle v. DHS*, in which we explained that "agency records" did not include "information provided by[] a governmental entity not covered by FOIA" when the "non-covered entity … has

10

manifested a clear intent to control the documents, such that the agency is not free to use and dispose of the documents as it sees fit." 959 F.3d at 77-78 (internal quotation marks omitted). That principle applies with equal force in this case, in which the entity not covered by the FOIA is not even a governmental entity.[7]

To decide this case, we start as we did in *Doyle* by examining the scope of the term "agency record" under the FOIA. The FOIA defines "agency" as "each authority of the Government of the United States" except "the Congress," "the courts of the United States," and other bodies including "courts martial and military commissions." 5 U.S.C. § 551(1). Additionally, "the term 'agency' under the FOIA" does not include "the Office of the President," "the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President." *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980); *see also Main St. Legal Servs., Inc. v. NSC*, 811 F.3d 542, 549 (2d Cir. 2016) (holding that the National Security Council is not an agency subject to the FOIA because it lacks authority other than to advise and assist the President).

Though the FOIA does not provide a definition of "agency records," "the Supreme Court [has] instructed" that "the term 'agency records' extends only to those documents that an agency both (1) 'creates or obtains,' and (2) 'controls at the time the FOIA request was made.'" *Jud. Watch*, 726 F.3d at 216 (alterations and emphasis

---

[7] In *Doyle*, we decided that "visitor logs for the White House Complex and the President's Mar-a-Lago home in Florida" requested from the Secret Service were not "'agency records' subject to the Freedom of Information Act." 959 F.3d at 73.

omitted) (quoting *Tax Analysts*, 492 U.S. at 144-45). "Control" by an agency requires more than mere possession. "[N]ot all documents in the possession of a FOIA-covered agency are 'agency records' for the purpose" of the FOIA, and "not all records physically located at an agency are 'agency records.'" *Id.* "We have explained that agency 'control' is key to determining whether materials qualify as 'agency records' under FOIA." *Doyle*, 959 F.3d at 77.

Certain prior cases have involved records obtained from governmental entities that are not subject to the FOIA, such as Congress, *see Jud. Watch*, 726 F.3d at 221, and the Office of the President, *see Doyle*, 959 F.3d at 77-78. But the same analysis applies when, as in this case, the agency obtained the documents from a non-governmental entity similarly not subject to the FOIA. Neither a presidential campaign nor a transition qualifies as an "agency" of the federal government under the FOIA. 5 U.S.C. § 551(1). A transition receives government funding,[8] but funding "short of Government control" leaves "grantees free from the direct obligations imposed by the FOIA." *Forsham v. Harris*, 445 U.S. 169, 182 (1980). A transition "is clearly not in the control of the incumbent President" but "answers only to the President-elect." *Ill. Inst. for Continuing Legal Educ. v. DOL*, 545 F. Supp. 1229, 1232 (N.D. Ill. 1982). Accordingly, the transition "is not within the executive branch of government and hence not an 'agency' within the meaning of § 552(e) of the FOIA." *Id.* at 1232-33.

Thus, it is "undisputed that a requester could not use FOIA to compel" the disclosure of records directly from a campaign or transition, just as a requester could not compel such disclosure from

---

[8] Presidential Transition Act of 1963, Pub. L. 88-277, § 3, 78 Stat. 153, 154-55 (1964), 3 U.S.C. § 102 note.

other non-agencies such as Congress or the Office of the President. *Jud. Watch*, 726 F.3d at 216. When an entity "is not an agency for FOIA purposes, documents generated" by that entity "are not agency records when they are made," *id.* (internal quotation marks and alteration omitted), so we inquire into "control" to determine whether such documents have become "agency records" after an agency obtains them.

To determine whether an agency exercises control over documents obtained from an entity not covered by the FOIA, we ask whether "'the non-covered entity … has manifested a clear intent to control the documents,' such that 'the agency is not free to use and dispose of the documents as it sees fit.'" *Doyle*, 959 F.3d at 77-78 (quoting *Jud. Watch*, 726 F.3d at 223). If the document "remains under the control of and continues to be the property of" the non-covered entity and the agency "holds the document, as it were, as a 'trustee,'" the document is not an agency record subject to the FOIA. *Goland v. CIA*, 607 F.2d 339, 347 (D.C. Cir. 1978). A document generated by a non-covered entity "has become an agency record" only if "the document has passed from the control of [the entity] and become property subject to the free disposition of the agency with which the document resides." *Id.*

We have applied this analysis to information that the Secret Service obtains from a protected entity in order to facilitate its provision of security services to that entity. We recognized in *Doyle* that the Office of the President "cannot retain effective physical control" of documents that must be shared with the Secret Service to facilitate the protection of the President, but because the Office of the President "manifested a clear intent to control the documents," those documents do not qualify as agency records. 959 F.3d at 77-78

13

(quoting *Jud. Watch*, 726 F.3d at 223, 225). We reached that conclusion in part "because it is hard for us to 'believe Congress intended that FOIA requesters be able to obtain from the gatekeepers of the White House what they are unable to obtain from its occupants.'" *Id.* (quoting *Jud. Watch*, 726 F.3d at 233).

The same logic applies here. In this case, the campaign and transition manifested a clear intent to control the documents. As the Secret Service explained via Deputy Director Newsome, "[a]ll" of the records "at issue in this case … were provided to the Secret Service with the expectation of privacy and the expectation that they would not be disseminated beyond the Secret Service personnel who had the need of the information … to perform their protective functions." J. App'x 805. The records were regularly marked as "confidential" and "[n]ot to be copied or shared," with "[r]eminder[s] to please not distribute" the records due to their "high[] confidential[ity]." J. App'x 816-17. "Regardless of their markings, however," the agency "treated" the information "as confidential." J. App'x 805. Under these circumstances, the Secret Service did not take control of the documents such that the documents were subject to the free disposition of the Secret Service.[9]

---

[9] *Doyle* emphasized that its holding was necessary to avoid deciding the "difficult constitutional question" that would arise if the FOIA were interpreted to require the disclosure via the Secret Service of presidential records. 959 F.3d at 77. Our decision in this case follows from the control test and does not depend on constitutional avoidance. But we note that similarly difficult constitutional questions regarding executive privilege or other confidentiality interests would arise if the FOIA required the disclosure of records belonging to a presidential transition, which deliberates and conducts business in anticipation of assuming the presidency on inauguration day. The government in this case said that if it

This conclusion is consistent with how presidential transition records have been treated in other cases. In *Democracy Forward Found. v. GSA*, the court held that records of a presidential transition were not "agency records" of the General Services Administration ("GSA"). 393 F. Supp. 3d 45 (D.D.C. 2019). In that case, as in this one, the agency had access to the records only because of its statutory obligation to provide services to the presidential transition. The GSA "functioned mainly as a 'warehouse' for the transition team's electronic communications" because "[i]t supplied a network to host and store records." *Id.* at 53. The "GSA might have been exposed to the content of communications but only incident to its monitoring of the transition team's networks to ensure their operation and security." *Id.* (internal quotation marks omitted). In those circumstances, the "GSA did not sufficiently 'control' the emails to qualify as 'agency records.'" *Id.* at 54.

The court also explained that the "FOIA's central purpose is to ensure that the *Government*'s activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed." *Id.* at 53 (quoting *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 774 (1989)). The transition's emails would not "shed any light about [the] GSA's operations or decision-making" and "are not 'agency records' subject to disclosure under FOIA." *Id.*

Similarly, in this case the Secret Service had access to the documents only incident to its provision of security services to the

---

did not prevail on its statutory arguments, "we would argue, and in fact we did reserve the … right to assert … that in fact privilege could be asserted" over the contested records. Oral Argument Audio Recording at 3:28.

campaign and the transition, and those documents do not reveal information about the Secret Service's operations or decision-making as distinct from those of the campaign and the transition. In short, the records at issue here are not "agency records" subject to disclosure under the FOIA.

## II

Even if the records in this case were properly considered "agency records," we still would reverse the judgment of the district court because Exemption 7(C) would shield the records from disclosure. The district court erred in holding that Exemption 7(C) did not apply.

Exemption 7(C) provides that "records or information compiled for law enforcement purposes" are exempt from disclosure under the FOIA "to the extent that the production of such … records or information … could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The district court concluded that the records in this case were compiled for law enforcement purposes, and neither party disputes that conclusion on appeal. The question is therefore whether disclosure might reasonably be expected to invade personal privacy unjustifiably.

If the agency identifies a privacy interest in the requested documents, "disclosure is unwarranted under Exemption 7(C) unless the requester can show a sufficient reason for the disclosure." *Associated Press v. DOD*, 554 F.3d 274, 288 (2d Cir. 2009) (internal quotation marks omitted). To overcome the privacy interest, the requester "must show that the public interest sought to be advanced is a significant one," with "an interest more specific than having the

16

information for its own sake," and that "the information is likely to advance that interest." *NARA v. Favish*, 541 U.S. 157, 172 (2004). Thus, "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny," *Reps. Comm.*, 489 U.S. at 772 (internal quotation marks omitted), while "[g]oals other than opening agency action to public scrutiny are deemed unfit to be accommodated under FOIA when they clash with privacy rights," *Associated Press*, 554 F.3d at 293 (quoting *FLRA v. U.S. Dep't of Veterans Affs.*, 958 F.2d 503, 510-11 (2d Cir. 1992)).

In this case, the district court recognized that the government successfully established that Trump and other third parties had cognizable privacy interests in the records. 403 F. Supp. 3d at 253. But the district court proceeded to make two errors. First, the district court unjustifiably discounted those privacy interests. Second, the district court overlooked the purpose of the FOIA "to open *agency action* to the light of public scrutiny," *Reporters Comm.*, 489 U.S. at 772 (emphasis added) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976)), by including in the purported public interest in disclosure access to information about the activities of non-agencies.

## A

The Secret Service filed declarations that established a basis for withholding the records. The agency explained that the campaign and transition provided the records with a clear understanding of confidentiality such that, in the agency's view, "the privacy rights of … Mr. Trump[] and the third parties identified in the documents outweighed any public interest in disclosure." *Behar*, 403 F. Supp. 3d

17

at 246. The understanding between the Secret Service and the campaign and transition that the records would be treated confidentially establishes a privacy interest under the FOIA. *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 177 (1991) (holding that the appellate court gave "insufficient weight to the fact that" witness interviews taken as part of an investigation "had been conducted pursuant to an assurance of confidentiality").

The district court discounted Trump's privacy interest as "limited substantially" by his candidacy for public office. 403 F. Supp. 3d at 254. This conclusion relied on an overreading of extra-circuit precedent.[10] We do not agree that "public figures" who are protected by the Secret Service have a lesser privacy interest "in information relating to their candidacies" that the Secret Service might obtain. 403 F. Supp. 3d at 254 (quoting *Common Cause*, 628 F.2d at 184). Many people who receive Secret Service protection are public figures, *see* 18 U.S.C. § 3056(a), and we do not think that status limits their privacy interests in information exchanged with the Secret Service to facilitate that protection. *Cf. Favish*, 541 U.S. at 170 ("We have observed that the statutory privacy right protected by Exemption 7(C) goes beyond the common law and the Constitution.").

---

[10] In *Common Cause v. Nat'l Archives & Recs. Serv.*, the court emphasized that it was not "suggesting that the presence of these circumstances will always or even usually tip the balance in favor of disclosure under 7(C)" and then noted as relevant that the "information sought about" "candidates for federal office" regarded "campaign contributions" that were independently "required by law to be reported publicly." 628 F.2d 179, 184 (D.C. Cir. 1980). The court did not reach any conclusion about whether disclosure was required. *See id.* at 186.

During a presidential campaign or transition in particular, a candidate or President-elect may receive advice on which he or she will rely after assuming the presidency. "[T]he public interest is best served by holding that communications made by presidential advisers in the course of preparing advice for the President come under the presidential communications privilege," *In re Sealed Case*, 121 F.3d 729, 751-52 (D.C. Cir. 1997), and Congress has recognized that the "national interest" in "continuity" requires presidential transition activities, Presidential Transition Act § 2, 3 U.S.C. § 102 note. Accordingly, we agree with DHS that the privacy interest here would not be "tempered," 403 F. Supp. 3d at 254, but heightened "to the extent any particular record did reveal information that directly or significantly illuminated President Trump's post-inaugural priorities or conduct … given the well-established confidentiality of presidential meetings and advisors," Appellant's Br. 49.

The district court also erred in discounting the privacy interests of third-party visitors because the Secret Service did not show "that disclosure of their names would lead to embarrassment, retaliation or other unwelcome consequences." 403 F. Supp. 3d at 253. Such consequences could make a privacy interest "particularly pronounced," *Associated Press*, 554 F.3d at 286, but that showing is not necessary and its absence did not justify discounting the privacy interests here. [11] Exemption 7(C) requires only that the agency

---

[11] As made clear in the Secret Service's supplemental filings, the agency could describe the privacy interests only generally because it was unfamiliar with the individuals named in the documents and the substance of the meetings between those individuals and the candidate or President-elect. *See* J. App'x 816-18. The FOIA does not require the Secret Service to

establish that "[t]he privacy interest protected by [the exemption] is an interest in 'avoiding disclosure of personal matters' and 'keeping personal facts away from the public eye.'" *Associated Press*, 554 F.3d at 286 (quoting *Reps. Comm.*, 489 U.S. at 762, 769). The Secret Service showed that the disclosed information "is the type of information that a person would ordinarily not wish to make known about himself or herself." *Id.* at 292; *see Behar*, 403 F. Supp. 3d at 253 (noting that the district court was "persuaded that participation in these meetings with candidates and presidents-elect is the type of information that a person often would not wish to make known about himself or herself"). But the district court nonetheless determined that it "should not give that generalization too much weight in the balance." *Id.*

### B

The district court further erred in its evaluation of the public interest in disclosure regarding the Secret Service's "performance of its statutory duties." 403 F. Supp. 3d at 251. The FOIA limits the public interest in disclosure to "public scrutiny" of "agency action." *Rose*, 425 U.S. at 372; *see also* 5 U.S.C. § 552(a). Here, the Secret Service explained that the requested records "do not reveal anything about the manner in which the Secret Service conducts its activities," J. App'x 805, and the district court even agreed that the documents would not "advance the public's understanding of the USSS's performance of its statutory duties," 403 F. Supp. 3d at 254. Nevertheless, the district court proceeded to hold that because the documents would reveal information about the inner workings of the

---

gather information about its protectees beyond that required to provide security services.

20

campaign and nascent administration, there was a public interest in disclosure under the FOIA. That is incorrect.

There is no cognizable public interest to be vindicated through the FOIA in "advancing public knowledge of whom Mr. Trump relied upon in making cabinet and other presidential appointments" or in "determining his presidential priorities." *Id.* at 255. To the contrary, disclosing records that reveal this pre-presidential information would shed no light on the operations or decision-making of the Secret Service—as the FOIA requires it must to vindicate a public interest in disclosure. The district court relied on a loose description of the FOIA as aiming to disclose "the operations or activities of the government"—even those parts of the government not subject to the FOIA—rather than focusing on the statutory purpose to reveal information about agency action. *Id.* at 251 (emphasis omitted) (quoting *DOD v. FLRA*, 510 U.S. 487, 495 (1994)).

Even the case on which the district court relied does not describe the purpose of the FOIA so broadly. In *DOD v. FLRA*, the Supreme Court "elaborated" on the statement that "the core purpose of the FOIA … is contributing significantly to public understanding of the operations or activities of the government." 510 U.S. at 495 (internal quotation marks, emphasis, and alteration omitted). The Court explained that the "statutory purpose" of the FOIA was "full agency disclosure" of "[o]fficial information that sheds light on an agency's performance of its statutory duties." *Id.* at 495-96 (quoting *Reps. Comm.*, 489 U.S. at 773). The Court expressly stated that the statutory purpose "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Id.* at 496 (quoting *Reps. Comm.*, 489 U.S. at 773). For that reason, the public

21

interest is not served when "the requester does not intend to discover anything about the conduct of the agency that has possession of the requested records." *Reps. Comm.*, 489 U.S. at 773.

Given these instructions from the Supreme Court, the district court's "public interest" analysis should have ended when it concluded that disclosure of the records in this case "would not advance the public's understanding of the USSS's performance of its statutory duties." 403 F. Supp. 3d at 254. Neither a campaign nor a transition is an agency the records of which the FOIA aims to disclose. The FOIA does not establish a public interest in revealing information about such entities.

At the same time, we have said that the FOIA, through Exemptions 6 and 7(C), recognizes a "strong public interest in encouraging witnesses to participate in future government investigations" that would be undermined if investigators could not assure witnesses that private information would remain confidential. *Perlman v. DOJ*, 312 F.3d 100, 106 (2d Cir. 2002), *vacated*, 541 U.S. 970 (2004), *reinstated after remand*, 380 F.3d 110 (2d Cir. 2004). In the same way, Exemption 7(C) recognizes a public interest in encouraging those officials who receive Secret Service protection to share information necessary for the Secret Service to perform its protective function.

Given these considerations, even if the records here were properly considered agency records, the privacy interests would outweigh any public interest in disclosure and thereby shield the records from disclosure under Exemption 7(C).

## CONCLUSION

The Secret Service obtained records from the campaign and transition subject to an understanding of confidentiality in order to provide security services to the presidential candidate and President-elect. Under these circumstances, the agency did not exercise control sufficient to convert the records into agency records subject to disclosure under the FOIA. Even if the records had been so converted, 5 U.S.C. § 552(b)(7)(C) would protect the records from disclosure. For these reasons, we **REVERSE** the judgment of the district court to the extent that it required the Secret Service to disclose the requested documents.